RUBY HULL v. STATE.

No. A-9213.   Feb. 19, 1937.
(65 Pac. [2d] 423.)

C. B. Leedy, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen, for the State.

DOYLE, J. The information in this case charges that in the county of Ellis, on the 25th day of July, 1936, Ruby Hull did have in her possession about seven quarts of "moonshine" whisky, with the unlawful intent to sell the same. Upon her trial she was by the verdict of a jury found guilty and her punishment fixed at confinement in the county jail for 30 days and a fine of $50.

August 17, 1936, motion for new trial was overruled and judgment entered in accordance with the verdict. She appeals to this court for reversal of the judgment, and assigns as error the overruling the motion to suppress the evidence, the admission of incompetent and prejudicial testimony over her objections, and insufficiency of the evidence to support the verdict.

It appears from the record that R. L. Boyd, sheriff, accompanied by W. M. Bowen, a deputy, and Chas. B. Leedy, county attorney, went to the home of plaintiff in error, in Turner's addition in the town of Gage, Ellis county, in executing a search warrant, issued upon an affidavit made by Chas. B. Leedy, county attorney.

The state introduced two witnesses, the sheriff and deputy sheriff, Bowen, who testified that on the 25th day of July, 1936, they searched the defendant's residence and

found a jug containing whisky, and three pints of whisky; that the defendant was not at home at the time; that the defendant's mother, Mrs. Smith, was in the house, and the sheriff read the search warrant to her, and she said: "If we would wait a few minutes she would show us where the whisky was, and she showed us."

The sheriff testified that he never saw the defendant, never served any search warrant on her, and that he never arrested anybody there; that on the 27th day of July, the defendant came to Arnett and was arrested.

W. H. Bowen, deputy sheriff, testified that he lives at Gage and went with the sheriff that night to the Ruby Hull home; that the sheriff went to the front door and he went to the back door; and they entered and searched the house.

He further testified as follows:

"Q. Had you, prior to this search, received complaint of the citizens around there relative to a disturbance of the peace at the Hull home. Mr. Leedy: We object to that as incompetent, irrelevant and immaterial. This defendant is not charged with disturbing the peace. The County Attorney: I understand that, but what I am trying to show is that fellows who drink hang around this place and fellows who come to and from it are drunk. The Court: Objection will be overruled. The defendant excepts. A. Two or three different parties have talked to me and told me about the disturbances that were going on down there all hours in the night. I didn't go down there and I don't know anything about it myself. Mr. Leedy: Now we move to strike the answer of the witness as hearsay, and as being incompetent and not binding on this defendant. The Court: Your motion will be overruled. The defendant excepts. County Attorney: Now, what was that answer again? Witness: I say two or three parties came to me and made complaint about this disturbance and noise that was going on at her house at

nights, and I passed it off and said that would be taken care of. Q. Did you ever observe fellows down at the Hull home that have a reputation of drinking whisky? Objected to as incompetent, irrelevant and immaterial: You can't prove the reputation of somebody not on trial. The Court: You may answer the question. Witness: Saturday afternoon, before this work was done that night, I had three parties, I didn't know them, informed me that they had made about three trips to that house that afternoon and that they found men there that were drinking, while they were not drunk, but I wasn't there."

As a witness in her own behalf, Ruby Hull testified that she had lived in 'the town of Gage about nine and one-half years, a divorced woman, the mother of two children; that she rents the house in which she and her mother live, paying $4 a month rent; that she worked for a living, takes in washing and ironing and goes out and does housework and takes care of women during confinement; that she and her mother get groceries from the welfare; and that her mother keeps whisky there for medicinal purposes on the advice of her Drs. Newman and Irvin; that she never did sell whisky to anybody or keep whisky for the purpose of sale. That the jug containing whisky was kept by her mother in the closet of her bedroom.

Dr. G. Irvin testified that he lives in Gage, a licensed and practicing physician for 36 years, and is personally acquainted with Bessie May Smith, the mother of the defendant, having known her about 15 years, and for several years she has been a patient of his, and he has prescribed for her for stomach trouble, heart trouble, and nervousness; that he prescribed stimulants and told her if she would keep whisky and take a little at intervals it would help her heart; that he was called to the house on the night of the raid, and found Mrs. Smith was in a very nervous condition and he had to prescribe for her.

To justify or sustain a conviction of having possession of intoxicating liquors with the intent to violate any of the provisions of the prohibitory liquor law, there must be evidence sufficient, not only to prove possession, but also to prove criminal intent.

The possession without an intent to sell or convey does not constitute an offense any more than an intent to sell or convey without possession would constitute an offense. Haltom v. State, 58 Okla. Cr. 117, 50 Pac. (2d) 744.

In the case of Thompson v. State, 9 Okla. Cr. 525, 132 Pac. 695, 698, we said:

"A man cannot be condemned on what a few of his unfriendly neighbors say of him or of his home in cases like this. Such evidence is merely hearsay, and its admission was prejudicial to the defendant."

In Brokhaus v. State, 11 Okla. Cr. 625, 150 Pac. 510, this court held:

"Upon a trial on an information charging that the defendant did have the possession of intoxicating liquors with the intent to sell the same, evidence of the general reputation of his home was incompetent to prove the charge." Held further: "Where hearsay testimony has been received which contributed to a verdict of guilty, the reception of such evidence does not constitute harmless error, but will be grounds for reversal."

The rule as stated above has since been followed in other decisions in this court. Hurst v. State, 25 Okla. Cr. 102, 219 Pac. 151; Williams v. State, 25 Okla. Cr. 284, 220 Pac. 667.

A private residence, occupied as such, is immune from search unless it, or some part of it, is used as a store, shop, hotel, boarding house, or place for storage, or un-

less such residence is a place of public resort. Section 2639, St. 1931.

It is undisputed that the house of this defendant was exclusively used as the private residence of the defendant and her mother, and the testimony on the part of the state is not sufficiently certain to show possession of more than one gallon of whisky in their home.

There is no testimony tending to show an intent to sell the same, and the testimony that the mother of the defendant had this liquor for medicinal purposes and was so being used by her upon the advice of her physician is undisputed.

In our opinion, the evidence is insufficient to show the defendant's possession of the liquor in question; however, assuming possession to have been shown, it was not shown that the amount seized was in excess of one gallon of spirituous or vinous liquors. Under the provisions of section 2625, there would be no presumption of intent to violate the liquor enforcement act.

It appears from the record that when the state rested the defendant interposed the following motion:

"The defendant at this time moves the court to strike from the evidence the testimony of the officers, the conversation and hearsay testimony which did not occur in the presence or hearing of the defendant.

"The Court: Motion will be overruled. Exception."

It follows from what has been said that the court erred in overruling the defendant's motion to strike.

When the state rested, and again at the close of all the testimony, her counsel moved the court to advise the jury to return a verdict of acquittal, for the reason that the evidence is insufficient to support a verdict of guilty,

18

which the court refused to do, and exceptions were reserved.

We think that under the evidence the trial court should have sustained the defendant's motion for a directed verdict of acquittal.

Because the conviction is contrary to law and to the evidence, and the erroneous admission of incompetent evidence on the part of the state, the judgment appealed from is reversed, and the cause remanded with direction to dismiss.

DAVENPORT, P. J., and BAREFOOT, J., concur.