## CLASON *v.* INDIANA.

No. 517. Argued March 10, 1939.—Decided March 27, 1939.

*Mr. William H. Thompson,* with whom *Mr. Albert L. Rabb* was on the brief, for appellant.

*Messrs. Edward H. Knight* and *Rexell A. Boyd,* Deputy Attorney General, of Indiana, with whom *Messrs. Omer Stokes Jackson,* Attorney General, *Urban C. Stover,* Deputy Attorney General, and *Harry M. Stitle, Jr.* were on the brief, for appellee.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

The Supreme Court of Indiana affirmed a judgment which convicted appellant of violating section eleven of the Animals Disposal Act approved March 12, 1937 [1] (c. 278, Acts 1937) by transporting a dead horse over a highway of that State and into Illinois without license. For-

---

[1] Indiana Acts 1937, c. 278—

"Sec. 4. (a) No person shall engage in this state in the business of operating a disposal plant, as herein defined, without first obtaining for each such disposal plant so operated by him, or in his behalf, a license and any vehicle certificates required, as herein provided; and no person, except one holding a license to operate such a disposal plant in this state, or who is acting for such licensee, or who is otherwise excepted by this act, shall either transport over any highways of this state, or dispose of to any person, the bodies of any dead animals in any manner herein prescribed, or in any other manner not permitted by law.

"(b) The said state veterinarian shall keep a record of all applications for permits, licenses and vehicle certificates, showing all thereof issued, denied, or revoked by him, and such other facts as he may prescribe.

"Sec. 11. (a) No person, except as herein provided, may haul or transport over the highways of the State of Indiana the bodies of any dead animals, except those that have been slaughtered and are intended for human food, without first obtaining and holding a license issued under the provisions of this act and which bodies are being transported to a disposal plant located in this state and operated by a person holding a license to engage in such business.

"(b) No license shall be issued to any person solely for the purpose of transporting the bodies of dead animals, but such transportation must be done solely by persons holding a license for disposal plants, so that such dead bodies may be properly and promptly disposed of under the requirements of this act; except that any public official of this state, charged by law with such duties, may remove or supervise the removal of any such dead bodies and the disposal thereof by any method provided for by this act where necessary to protect the public health and welfare.

"(c) All vehicles used in the transportation of the bodies of dead animals, under the provisions of this act, shall have a tank or metal

bidden transportation is admitted; also that while license can be obtained under prescribed conditions for such transportation within the State it is prohibited for points outside.

Section eleven is a part of a comprehensive statute which requires, and undertakes to regulate, the prompt

lining in the bed of such vehicle, or be otherwise so constructed that the same shall be practically watertight, so that no drippings or seeping from such dead bodies shall escape from such vehicles where this can be obviated; and all vehicles must have an end-gate constructed or lined with the same materials, and hinged at the bottom and fastened firmly at the top when closed and so designed, so far as practical, that drippings and seepings shall not escape from such part of said vehicle while engaged in such transportation; and every such vehicle shall have a bed of such depth and type of construction and equipment that any dead body or bodies therein shall be completely hidden from view of persons using the highways and any public nuisance obviated while being transported.

"(d) The state veterinarian may prescribe specific and also additional requirements, not inconsistent with the provisions and purposes of this act, governing and regulating such transportation and the construction, equipment, maintenance and operation of such vehicles.

"(e) After the bodies of dead animals have been unloaded from any vehicle used for the transportation thereof to the disposal plant, on each trip, such vehicle and all parts thereof, and in the event draught animals are used to draw such conveyances, the feet of such animals, shall be thoroughly cleansed and disinfected in such manner and with such a solution as the state veterinarian shall prescribe by regulation, and in addition thereto all such vehicles shall be washed out thoroughly with steam or hot water after each use thereof in transporting such dead bodies.

"(f) Vehicles, when loaded with the body of an animal which has died of disease, shall be driven directly to the place of disposal, except that the driver may stop on the highway for other like dead bodies, but he shall not drive upon the premises of any person unless he first obtains the permission of such person and he shall avoid creating any nuisance, during such transportation and in the event any drippings or seepage should escape from such vehicle, to his knowledge, he shall clean up the same and remedy such escape, if possible to do so."

disposition of large dead animals (not slaughtered for human food) under the general supervision of the State Veterinarian. The obvious purpose of the enactment is to prevent the spread of disease and the development of nuisances.

The prescribed plan exacts that within twenty-four hours after death owners shall bury or burn such bodies on their premises, or there deliver them to the representative of a disposal plant licensed to do business within the State. It further directs that the body shall be promptly carried to such plant in a sanitary vehicle and speedily rendered innocuous. The conveyance must be thoroughly and promptly disinfected at the plant.

The validity of the statute was unsuccessfully challenged on the ground that it unduly discriminates against and burdens interstate commerce and thereby violates the Federal Constitution. The Supreme Court of the State reviewed the statute; pointed out its purpose to suppress obvious danger to public health; referred to the means adopted as reasonably appropriate to that end; quoted from *Bowman* v. *Chicago & N. W. Ry. Co.*, 125 U. S. 465, 489.[2] It concluded that dead bodies of animals not

---

[2] "Doubtless the States have power to provide by law suitable measures to prevent the introduction into the States of articles of trade, which, on account of their existing condition, would bring in and spread disease, pestilence, and death, such as rags or other substances infected with the germs of yellow fever or the virus of small-pox, or cattle or meat or other provisions that are diseased or decayed, or otherwise, from their condition and quality, unfit for human use or consumption. Such articles are not merchantable; they are not legitimate subjects of trade and commerce. They may be rightly outlawed as intrinsically and directly the immediate sources and causes of destruction to human health and life. The self-protecting power of each State, therefore, may be rightfully exerted against their introduction, and such exercises of power cannot be considered regulations of commerce prohibited by the Constitution." *Bowman* v. *Chicago & N. W. Ry. Co.*, 125 U. S. 465, 489.

slaughtered for food are not legitimate subjects of commerce; that the statute is an appropriate sanitary measure whose effect upon interstate commerce, if any, is merely incidental.

As the precise point for our determination, counsel for appellant submit the following—

"The Supreme Court of Indiana erred in holding that the Indiana Dead Animal Disposal Act of 1937 was valid as a reasonable regulation or quarantine and not invalid as a discriminatory prohibition of interstate commerce in commodities recognized as legitimate articles of intrastate commerce, contrary to Article I, Section 8, Clause 3, of the Constitution of the United States."

It seems plain enough that the challenged statute is a sanitary and health measure not intended to cause discrimination against or to burden interstate commerce. Its purpose is to promote the health of the people of the State in feasible ways.

"The power of the State to prescribe regulations which shall prevent the production within its borders of impure foods, unfit for use, and such articles as would spread disease and pestilence, is well established. Such articles, it has been declared by this court, are not the legitimate subject of trade or commerce, nor within the protection of the commerce clause of the Constitution. . . . Nor does it make any difference that such regulations incidentally affect interstate commerce, when the object of the regulation is not to that end, but is a legitimate attempt to protect the people of the State." *Sligh* v. *Kirkwood*, 237 U. S. 52, 59–60.

Here, contrary to what seems to be the insistence of counsel, the State has not recognized dead horses as legitimate articles of intrastate commerce. It permits them to be sold only to licensed operators who must transport them immediately under strict sanitary regulations for prompt delivery to a licensed plant there to be rendered

innocuous without delay by prescribed methods. All this is part of a workable scheme to secure prompt removal of decaying carcasses and thus protect against obvious evils.

We can find no substantial basis for the charge of discrimination against legitimate interstate commerce. That any real burden upon commerce which the State is not free to inhibit will result from the challenged statute seems impossible.

There is no suggestion of conflict with a federal enactment. The mere power of the Federal Government to regulate interstate commerce does not disable the States from adopting reasonable measures designed to secure the health and comfort of their people. The statute under consideration is an effort to discharge an obligation to the public; the means adopted we think are clearly appropriate to this lawful end.

The judgment of the court below must be

*Affirmed.*