## JOHNSON v. YELLOW CAB TRANSIT CO.
### No. 2697.

Circuit Court of Appeals, Tenth Circuit.
July 26, 1943.

Sam H. Lattimore, Asst. Atty. Gen., of Oklahoma (Mac Q. Williamson, Atty. Gen., of Oklahoma, and George Miskovsky, Co. Atty., of Oklahoma City, Okl., on the brief), for appellants.

J. B. Dudley and Duke Duvall, both of Oklahoma City, Okl. (Dudley, Duvall & Dudley, of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

The F. A. S. Officers Club is an organization composed of several thousand army officers who are on duty at the United States Fort Sill Military Reservation.[1] The Club

---

[7] Johnson v. Mutual Life Ins. Co., 4 Cir., 70 F.2d 41, 44; Williston on Contracts, Rev.Ed., Vol. 3, p. 2272.

[1] Hereinafter called the Reservation.

is managed by a secretary who is an army officer in active service. It provides, among other things, an officers' mess, living quarters for a number of officers, lounges, reading rooms, and other recreational facilities, and renders various club services to its members.

Prior to October 24, 1942, several hundred members of the Club gave to the Club secretary their individual written orders for varying quantities of intoxicating liquor. These orders designated the brand and quantity desired and were accompanied by checks or money to pay for such intoxicating liquor. The Club secretary, acting for such officers, assembled, tabulated, totaled, and forwarded these orders to M. B. Gintz Company, at East St. Louis, Illinois. The Gintz Company accepted the orders and in fulfillment thereof, on October 24, 1942, delivered to Yellow Cab Transit Company [2] at East St. Louis, on a uniform bill of lading, 225 cases of wine and spirituous liquors, consigned to F. A. S. Officers Club Mess, at the Reservation.

While such shipment was in the possession of the Transit Company as a common carrier and in the course of transit from East St. Louis to the Reservation, but while it was momentarily stopped at the terminal and dock of the Transit Company at Oklahoma City, Oklahoma, it was seized by Johnson, Commissioner of Public Safety of the State of Oklahoma, Husted, Superintendent of the Bureau of Identification and Investigation of the Department of Public Safety of Oklahoma, West and Riggs, deputies under the Superintendent, and McGrew and Kolb, deputy sheriffs of Oklahoma County, Oklahoma,[3] and was transported to and placed in a vault in the county courthouse of Oklahoma County, where it is held under the claim that it is an illegal shipment of intoxicating liquor subject to confiscation and destruction.

Had the shipment been delivered at the Reservation, it would have been received by the secretary of the Club for delivery to the officers who had placed the order.

This action was commenced by the Transit Company against the state enforcement officers for a mandatory injunction requiring them to hold the shipment in status quo pending the determination of the action and requiring them to return the shipment to the Transit Company and to refrain from interfering with the Transit Company's possession and movement of such shipment in interstate commerce to its destination.

From a judgment granting the relief prayed for, the state enforcement officers have appealed.

The Reservation is located wholly within the exterior boundaries of Oklahoma. It was acquired by the United States from France long before Oklahoma became a state. Since prior to the admission of Oklahoma as a state it has been, and it now is, used exclusively for military purposes and for the performance of the functions of the War Department of the United States. In 1913, the state of Oklahoma enacted a statute ceding exclusive jurisdiction over the Reservation, with certain exceptions not here material, to the United States.[4]

Oklahoma has power under the Twenty-first Amendment to forbid all importations of intoxicating liquor into the state or to adopt a lesser degree of regulation than total prohibition.[5] It may also require a permit for the transportation of intoxicating liquor in interstate commerce through the state as a means of establishing the identity of those who engage in such transportation and their routes and points of destination, and of enabling local officers to take appropriate measures to insure transportation without diversion.[6]

Oklahoma has not enacted any statutes regulating the transportation of intoxicating liquor through the state. It requires a permit for transportation of liquor into the state.[7]

While the Twenty-first Amendment increased the power of the state with respect to importation into the state, it did not extend the territorial jurisdiction of the state. Territorial jurisdiction over the Reservation is in the United States, a dis-

[2] Hereinafter called the Transit Company.

[3] Hereinafter called the state enforcement officers.

[4] See 80 O.S.1941 § 4; Act of June 25, 1936, 49 Stat. 1938, 40 U.S.C.A. § 290; Act of October 9, 1940, 54 Stat. 1059, 4 U.S.C.A. §§ 13–18.

[5] State Board of Equalization v. Young's Market Co., 299 U.S. 59, 57 S. Ct. 77, 81 L.Ed. 38; Mahoney v. Joseph Triner Corporation, 304 U.S. 401, 58 S. Ct. 952, 82 L.Ed. 1424.

[6] Duckworth v. Arkansas, 314 U.S. 390, 396, 62 S.Ct. 311, 86 L.Ed. 294, 138 A.L.R. 1144.

[7] 37 O.S. 1941 §§ 41–45.

tinct sovereignty, and the Twenty-first Amendment gave the state no power to prohibit importation of intoxicating liquor into the Reservation or to regulate the transportation, possession, sale, or other disposition of such liquor within the Reservation. There was no transportation into Oklahoma for delivery or use therein. The shipment was consigned for delivery in the Reservation.[8] We conclude, therefore, that the seizure by the state enforcement officers was without warrant of law and was wholly illegal.

The Assimilative Crimes Act[9] provides that whoever, within the territorial limits of a state, within .or upon any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, shall do any act or thing which is not made penal by any act of Congress, but which if committed within the jurisdiction of the state, by the laws thereof in force on February 1, 1940, would be penal, shall be deemed guilty of a like offense and subject to a like punishment.

The Assimilative Crimes Act adopted, for the government of the designated places under the exclusive or concurrent jurisdiction of the United States, the criminal laws in force, on the date mentioned in the Act, in the several states within which such places are situated, in so far as such laws have not been displaced by specific acts of Congress. By adoption they became Federal laws in force in the designated places.[10]

It is urged that the statutes of Oklahoma hereinafter referred to were put in force in the Reservation as Federal statutes by the Assimilative Crimes Act, and that by virtue thereof it is unlawful to import intoxicating liquor into the Reservation, to keep or maintain a club room in which intoxicating liquor is received, kept, or stored for distribution or division among the members of the Club, to receive intoxicating liquor from a common carrier, or to possess intoxicating liquor; and it is asserted that relief should have been denied by virtue of the maxim ex dolo malo non oritur actio. In dealing with this contention we assume, but do not decide, that the Oklahoma penal statutes relating to intoxicating liquor were put in force in the Reservation as Federal statutes by the Assimilative Crimes Act; neither do we decide that, if importation into the Reservation would violate a Federal statute, injunctive relief against the unlawful acts of the enforcement officers should be denied.[11]

Sec. 4, ch. 153, O.S.L.1933, 37 O.S.A. § 31, provides that it shall be unlawful for any person to have or keep in excess of one quart of intoxicating liquor "whether such liquor be intended for the personal use of the person so having and keeping the same or not." The foregoing section was originally enacted as § 4, ch. 70, O.S.L.1910–11. In Ex parte Wilson, 6 Okl.Cr. 451, 119 P. 596, it was held unconstitutional on the ground that it is not within the police power of the state to prohibit possession of intoxicating liquor for personal use.

Sec. 5, ch. 70, O.S.L.1910–11, 37 O.S.A. § 32,[12] was unconstitutional for the same reason. Morse v. State, 63 Okl.Cr. 445, 77 P.2d 757, 763, which cited Ex parte Wilson, supra, with approval. See, also, Brickey v. State, 55 Okl.Cr. 451, 32 P.2d 743, 744. It was superseded by § 6, ch. 26, O.S.L.1913, as amended by § 3, ch. 153, O.S.L. 1933, 37 O.S.A. § 82.[13] The last-mentioned section does not make mere possession of intoxicating liquor unlawful; it merely makes possession of in excess of one quart of intoxicating liquor prima facie evidence of an intention to convey, sell, or otherwise dispose of such liquor; and the Oklahoma Criminal Court of Appeals has repeatedly held that mere possession of intoxicating liquor without an intent to sell, barter, or give away such liquor does not constitute an offense under the Oklahoma

---

[8] See Collins v. Yosemite Park Co., 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502.

[9] 18 U.S.C.A. §§ 451, 468.

[10] Franklin v. United States, 216 U.S. 559, 568, 30 S.Ct. 434, 54 L.Ed. 615; United States v. Press Publishing Company, 219 U.S. 1, 8, 31 S.Ct. 212, 55 L. Ed. 65, 21 Ann.Cas. 942; People of Puerto Rico v. Shell Company, 302 U.S. 253, 266, 58 S.Ct. 167, 82 L.Ed. 235.

[11] Cf. Leisy v. Hardin, 135 U.S. 100, 10 S.Ct. 681, 34 L.Ed. 128; Bowman v. Chicago & Northwestern Ry. Co., 125 U.

S. 465, 8 .S.Ct. 1062, 31 L.Ed. 700; McFarland v. American Sugar Refg. Co., 241 U.S. 79, 84, 85, 36 S.Ct. 498, 60 L.Ed. 899; Barnett v. State, 243 Ala. 410, 9 So.2d 267, 268; McCanless v. Graham, 177 Tenn. 57, 146 S.W.2d 137, 138.

[12] It provided that it should be unlawful for any person to have or keep in or about his place of residence more than one gallon of intoxicating liquor.

[13] Whitwell v. State, 72 Okl.Cr. 192, 114 P.2d 489, 490; Young v. State, 74 Okl.Cr. 64, 123 P.2d 294, 299.

statutes.[14] We conclude, therefore, that the possession of intoxicating liquor for personal use and not for unlawful sale or other disposition is not prohibited in Oklahoma and, therefore, is not prohibited within the Reservation by virtue of the Assimilative Crimes Act.

Sec. 1, ch. 186, O.S.L.1917, 37 O.S.A. § 38, provides that it shall be unlawful for any person to receive within Oklahoma any intoxicating liquor from a common or other carrier, or to possess in Oklahoma any intoxicating liquor received from a common or other carrier, and that its provisions shall apply to "such liquors intended for personal use, as well as otherwise, and to interstate as well as intrastate shipments or carriage." Since, under the decisions in Ex parte Wilson and Morse v. State, supra, possession of intoxicating liquor for personal use may not be prohibited, it would seem that this section is unconstitutional. If it is beyond the power of the legislature to make unlawful the possession of intoxicating liquor for personal use, it must likewise be beyond its power to make unlawful the possession of intoxicating liquor for personal use received from a common carrier.

Sec. 3610, O.R.L.1910, as amended by § 1, ch. 13, O.S.L.1927, 37 O.S.A. § 6, provides that it shall be unlawful to keep or maintain any club room where intoxicating liquor is received, kept, or stored for sale or for distribution or division among members of such club. We cannot say upon the facts here presented that the receipt of such shipment by the secretary of the Club and the delivery to the officers of their several orders embraced in the shipment would constitute a violation by the Club of the foregoing section. It seems to us that under the facts it could not be said that the Club received, kept, or stored the liquor for sale or for distribution to its members. The distribution was not to be made among the members of the Club, but among the officers who had given the order. The Club's secretary merely acted as their agent. Indeed, counsel for the state enforcement officers in their brief say, "The club, of course, appears to have no actual connection with this liquor."

Sec. 3605, O.R.L.1910, as amended by § 2, ch. 153, O.S.L.1933, 37 O.S.A. § 1, makes it unlawful to "ship, or in any way convey" intoxicating liquor "from one place within this state to another place therein." This section deals entirely with intrastate transportation. It has no application to transportation from without the state of Oklahoma into such state, or into the Reservation.

Sec. 1, p. 16, O.S.L.1939,[15] provides that it shall be unlawful to import into the state of Oklahoma intoxicating liquor containing more than four per cent of alcohol by volume, without a permit therefor secured as provided in the Act. The Act provides for an application to the State Tax Commission for such a permit and for the issuance of the permit by the Tax Commission. We think it clear that this Act can have no application within the Reservation. Congress has made no provision for a permit and Oklahoma has no jurisdiction to require or grant permits for the importation of intoxicating liquor into the Reservation, or to otherwise regulate such importation.[16] Since there is no way to obtain a permit to import intoxicating liquor into the Reservation, one who imports liquor into the Reservation should not be held criminally responsible for not securing a permit which he could not obtain. To hold otherwise would make the Oklahoma statute, by virtue of the Assimilative Crimes Act, not a prohibition against importation into the Reservation without a permit, but a total prohibition against such importation.

By the provisions of 10 U.S.C.A. § 1350, 31 Stat. 758, the sale of beer, wine, or intoxicating liquors in any post exchange, canteen, or army transport is prohibited. Here, there was no sale within the Reservation. The sale was consummated in East St. Louis. It was contemplated only that there should be a transportation of the intoxicating liquor into the Reservation and a delivery thereof to the Club secretary as agent for the army officers who placed the order. This, in our opinion, did not constitute a violation of § 1350, supra.

■ Accordingly, we conclude that the transportation of the intoxicating liquor in-

14 Whitwell v. State, 72 Okl.Cr. 192, 114 P.2d 489, 490; Haltom v. State, 58 Okl.Cr. 117, 50 P.2d 744, 746; Hull v. State, 61 Okl.Cr. 12, 65 P.2d 423, 425; Stump v. State, 66 Okl.Cr. 391, 92 P.2d 616, 619; Knighton v. State, 64 Okl.Cr. 322, 79 P.2d 1030, 1032; Robinson v. State, 71 Okl.Cr. 75, 108 P.2d 196, 198.

15 37 O.S.1941, §§ 41–48.

16 Collins v. Yosemite Park Co., 304 U. S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502.

to the Reservation and the delivery thereof to the Club secretary for delivery to the officers who joined in the order would not constitute a Federal offense under the Assimilative Crimes Act, or under § 1350, supra.

The judgment is affirmed.

BRATTON, Circuit Judge (concurring).

■ The United States acquired by cession from France the lands comprising the Fort Sill Military Reservation in Oklahoma, and since long prior to the admission of the state into the Union, the Reservation has been used continuously and exclusively for military purposes of the United States. By statute, the state ceded to the United States exclusive jurisdiction over all territory owned by the United States and comprising the Reservation so long as the United States should own and hold the Reservation for military purposes, except that the state reserved the right to serve civil or criminal process therein in suits or prosecutions for or on account of rights acquired, obligations incurred, or crimes committed in the state but outside the Reservation, and the further right to tax railroad companies and other corporations and their franchises and property within the Reservation. 80 O.S. 1941 § 4. The United States did not expressly accept the cession but that was unnecessary as it will be presumed in the absence of any dissent. Fort Leavenworth R. Co. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264. By act of Congress, the United States consented that the several states should have authority to make their Workmen's Compensation Acts applicable to lands and premises owned by the United States within the exterior boundaries of such states. 49 Stat. 1938, 40 U.S.C.A. § 290. Oklahoma accepted the cession and extended its Workmen's Compensation Act accordingly. · 85 O.S.1941 § 4. And by act of Congress, the United States consented that the several states be empowered to extend their income, sales, and use tax acts to Federal areas within such states. 54 Stat. 1059, 4 U.S.C.A. §§ 13, 14. Aside from these exceptions, none of which has any material bearing here, the laws of Oklahoma as state laws do not have any force or effect within the Reservation. Fort Leavenworth R. Co. v. Lowe, supra; Collins v. Yosemite Park Co., 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502.

Section 272 of the Criminal Code, 18 U. S.C.A. § 451, and section 289 of such Code, 18 U.S.C.A. § 468, commonly called the Assimilative Crimes Act, together, provide in effect that the doing or failure to do any act or thing on lands reserved or acquired for the exclusive use of the United States and under the exclusive jurisdiction thereof, which is not made penal by an act of Congress but which if committed within the jurisdiction of the state in which such lands are situated would constitute a penal offense, shall constitute a like offense and be subject to like punishment.

■ An existing statute in Oklahoma, 37 O.S.1941 § 41, provides that it shall be unlawful to import or transport into the state intoxicating liquor containing more than four per cent of alcohol by volume, without a permit first secured therefor as thereinafter provided. And there are other state statutes making it penal to do certain things in respect of intoxicating liquor but it is. unnecessary to detail them. However, the Assimilative Crimes Act does not make these state statutes effective as state laws. within the Reservation. Where that act applies, it adopts as laws of the United States for the government of designated places under the exclusive jurisdiction of the United States the criminal laws of the respective states in which such places are situated. Under its provisions, the laws of the state become laws of the United States. in respect of such a place. They have no effect whatever as laws of the state. Franklin v. United States, 216 U.S. 559, 30 S.Ct. 434, 54 L.Ed. 615; United States v. Press Publishing Co., 219 U.S. 1, 31 S.Ct. 212, 55 L.Ed. 65, 21 Ann.Cas. 942; People of Puerto Rico v. Shell Co., 302 U.S. 253, 58. S.Ct. 167, 82 L.Ed. 235.

■■ The Twenty-first Amendment of the Constitution of the United States, and the Act of August 27, 1935, 49 Stat. 877, 27 U.S.C.A. § 122, each prohibit the transportation or importation of intoxicating liquor into a state in violation of the laws of such state. A state is therefore free to. forbid the importation of intoxicating liquor in interstate commerce into its territorial boundaries or it may enact regulatory provisions for such importation. State Board v. Young's Market Co., 299 U.S. 59, 57 S.. Ct. 77, 81 L.Ed. 38; Mahoney v. Triner Corp., 304 U.S. 401, 58 S.Ct. 952, 82 L.Ed. 1424; Indianapolis Brewing Co. v. Liquor Control Commission, 305 U.S. 391, 59 S.Ct. 254, 83 L.Ed. 243. And it may impose reasonable regulations intended to safeguard. the movement of such liquor in interstate ·

commerce through the state, provided they do not constitute a substantial burden on such commerce. Duckworth v. Arkansas, 314 U.S. 390, 62 S.Ct. 311, 86 L.Ed. 294, 138 A.L.R. 1144. But a state has no power to forbid the transportation in interstate commerce of intoxicating liquor through its territorial boundaries. United States v. Gudger, 249 U.S. 373, 39 S.Ct. 323, 63 L.Ed. 653; Williams v. Commonwealth, 169 Va. 857, 192 S.E. 795. And that is true even though the shipment is enroute to a destination where the manufacture and sale of such liquor is prohibited by state law. McCanless v. Graham, 177 Tenn. 57, 146 S.W. 2d 137; Barnett v. State, 243 Ala. 410, 9 So.2d 267.

■ This shipment crossed state lines and was in every essential respect a movement in interstate commerce. It originated in Illinois, and its destination was a point within the geographical boundaries of Oklahoma but wholly beyond the jurisdiction or control of the state in respect of the sale, possession, or use of intoxicating liquor. The state had no power, either under the sweep of the Twenty-first Amendment, as an attribute of sovereignty, or otherwise, to interfere by seizure and confiscation with such interstate commerce under color of preventing the importation of intoxicating liquor in violation of its local law. Cf. Collins v. Yosemite Park Co., supra.

MURRAH, Circuit Judge (dissenting).

The State of Oklahoma has asserted the power to seize and confiscate a shipment of intoxicating liquor, while being transported by a common carrier to the Ft. Sill Military Reservation, which is enclaved within the State of Oklahoma. The asserted power to seize and confiscate the shipment of liquor in question is an attempted exercise of the police power of the State in its purest form, because it relates to a declared public policy, affecting the public morals of the State's inhabitants. The police power of the state is an indispensable prerogative of state sovereignty, and "at times the most insistent, and always one of the least limitable of the powers of government." Eubank v. Richmond, 226 U.S. 137, 142, 33 S.Ct. 76, 77, 57 L.Ed. 156, 42 L.R.A.,N.S., 1123. See, also, Sligh v. Kirkwood, 237 U. S. 52, 59, 35 S.Ct. 501, 59 L.Ed. 835; Clason v. Indiana, 306 U.S. 439, 59 S.Ct. 609, 83 L.Ed. 858; Ziffrin, Inc., v. Reeves, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128. The wisdom of this declared policy is of course within the peculiar competence of the people of Oklahoma. The effect of the judgment of the lower court, as upheld by the majority, is to enjoin the asserted police power of the State, ancillary to the enforcement of its criminal laws, on the grounds that the laws are rendered inoperative by force of the transcendent Federal law.

It is difficult to discern from the expressions of the majority whether the transcendent power to be vindicated by injunctive process springs from the paramount power of Congress to regulate interstate commerce, or the exclusive power of Congress to exercise authority over all places expressly committed to its jurisdiction by the Federal Constitution. Art. 1, Sec. 8, Clause 17; Art. 6, Clause 2). See Pacific Coast Dairy v. Department of Agriculture, 318 U.S. 285, 63 S.Ct. 628, 87 L.Ed. ——; Cf. Penn Dairies v. Milk Control Commission, 318 U.S. 261, 63 S.Ct. 617, 87 L.Ed. ——.

In order to clearly define our differences, it should be here noted that I fully agree that the Ft. Sill Military Reservation, although located within the geographical boundaries of the State of Oklahoma, is an enclave wholly and exclusively within the jurisdiction of the Federal government, and that the State of Oklahoma is powerless to regulate any activities conducted thereon, except in respect to matters not material here. Furthermore, the shipment of liquor originated in Illinois, and at the time of its seizure was being transported by common carrier to the Ft. Sill Reservation; was thus moving in interstate commerce, and was entitled to protection and immunity as such, if it be regarded as a legitimate article of interstate commerce, the transportation of which is incidental to legitimate activities conducted within the reservation. Our point of difference is, that in my judgment the State of Oklahoma, by its Constitution and laws, makes it unlawful to possess, transport, furnish, or receive this particular shipment of intoxicating liquor, and it is therefore contraband and subject to seizure and confiscation under the laws of the State, and the Federal Government has by its laws not only consented to the operation of Oklahoma laws in respect to the particular commodity involved, but has also made the same acts a Federal offense when committed within the boundaries of the enclave. Consequently, the shipment is not a legitimate article of interstate commerce; there

is no governmental function to protect; no legitimate interstate activity to immunize; and, no Federal legislation or policy to vindicate.

By its Constitution, Oklahoma has prohibited and declared unlawful the manufacture, sale, barter, giving away, or furnishing of intoxicating liquor within the State,[1] and by its laws has declared unlawful the importation into the State of any intoxicating liquors for beverage purposes;[2] or to receive, directly or indirectly, any liquors, the sale of which is prohibited by the laws of Oklahoma, from a common or other carrier, or to possess the same, whether such liquors are intended for personal use or otherwise.[3] Oklahoma has also declared that the possession of more than one quart of intoxicating liquor is prima facie evidence of its illegal possession;[4] and it is unlawful to keep or maintain any club room where liquor is kept or stored for sale, or for distribution or division among the members of such club.[5] Thus by its network of laws, Oklahoma has made it plain that the possession of intoxicating liquors for beverage purposes is contrary to its public policy.

By force of the Assimilative Crimes Act,[6] any act or thing committed or omitted within the Ft. Sill Military Reservation, which is not made penal by an act of Congress, but which if committed or omitted within the State of Oklahoma, would be a violation of its criminal laws, is a violation of Federal law and punishable as such. Furthermore, by express Federal enactment, it is unlawful for any person to sell or deal in beer, wine, or any intoxicating liquors on the Military Reservation. Act of Feb. 2, 1901, 31 Stat. 758, 10 U.S.C.A. § 1350. It follows therefore that it is a violation of the Federal law to import intoxicating liquors into the Reservation; to receive intoxicating liquors from a common or other carrier, whether intended for personal use or otherwise; to sell or otherwise furnish the same; and, the possession of more than one quart of intoxicating liquor on the reservation is prima facie evidence of its illegal possession. Furthermore, it is unlawful to maintain a club room in which intoxicating liquor is kept, or stored, for distribution among the members of the club.

It thus becomes sufficiently plain that the transportation of the intoxicating liquor is not incidental to any legitimate activities upon or within the Military Reservation, but would be illegal and contraband at the point of its destination. It is therefore not a legitimate article of interstate commerce. Interstate immunity against the operation of state criminal laws does not extend to articles moving in interstate commerce to an unlawful destination. If this be true, then the maxim, ex dolo malo non oritur actio, has cogent application, and there is no justifiable basis for injunctive relief by a Federal court.

In order to make out a case in equity, the majority hold that it is not unlawful to possess the liquor in question for one's personal use in Oklahoma, and it is therefore not unlawful to possess it on the Military Reservation. This conclusion is reached by holding the State statute (Laws of 1917, ch. 186, p. 350, Sec. 1, 37 O.S.A. § 38, making it unlawful to receive the liquor from a common or other carrier, or to possess it, whether intended for personal use or other-

---

[1] Prohibition Ordinance to the Oklahoma Constitution. Following Schedule § 43.

[2] Laws 1939, Secs. 1-5, 37 O.S. 41-45. See Hayes v. United States, 10 Cir., 112 F.2d 417; Epps v. United States, 10 Cir., 112 F.2d 931; Flippin v. United States, 8 Cir., 121 F.2d 742, certiorari denied, 314 U.S. 677, 62 S.Ct. 184, 86 L.Ed. 542; Hinkle v. United States, 8 Cir., 115 F. 2d 217.

[3] Laws 1917, ch. 186, Sec. 1, 37 O.S.A. § 38. See DeHasque v. Atchison, etc., Ry. Co., 68 Okl. 183, 173 P. 73, L.R.A. 1918F, 259; Baldridge v. State, 80 Okl. 85, 194 P. 217; Walker v. State, 18 Okl. Cr. 661, 197 P. 520.

[4] Laws 1913, ch. 26, p. 48, Sec. 6, Laws 1923-24, ch. 123, p. 144, Sec. 1, Laws 1933, ch. 153, p. 339, Sec. 3, 37 O.S.A. § 82. See Morse v. State, 63 Okl.Cr. 445, 77 P.2d 757; Whitwell v. State, 72 Okl.Cr. 192, 114 P.2d 489, 490; Haltom v. State, 58 Okl.Cr. 117, 50 P.2d 744, 746; Hull v. State, 61 Okl.Cr. 12, 65 P.2d 423, 425; Stump v. State, 66 Okl.Cr. 391, 92 P.2d 616, 619; Knighton v. State, 64 Okl.Cr. 322, 79 P.2d 1030, 1032; Robinson v. State, 71 Okl.Cr. 75, 108 P.2d 196, 198.

[5] Sec. 3610, R.L.1910, Laws of 1927, ch. 13, Sec. 1, 37 O.S.A. § 6.

[6] Cr.Code § 289, as last amended June 6, 1940, 54 Stat. 234, 18 U.S.C.A. § 468. See United States v. Paul, 6 Pet. 141, 8 L.Ed. 348; Franklin v. United States, 216 U.S. 559, 568, 30 S.Ct. 434, 54 L. Ed. 615; United States v. Press Publishing Co., 219 U.S. 1, 8, 31 S.Ct. 212, 55 L.Ed. 65, 21 Ann.Cas. 942.

wise, unconstitutional. Thus, it is said that the shipment violated no law—State or Federal; that its seizure and confiscation by the State officials was an unwarranted interference with interstate commerce, and the common carrier is therefore entitled to injunctive relief. It is a sufficient answer to say that state criminal laws are not lightly nullified by Federal courts of equity on the grounds that they are unconstitutional. The State Act, thought to be unconstitutional, became law in 1917; it has been before the Oklahoma courts for interpretation and construction, its constitutionality has not been challenged, and I do not think we are warranted in lightly setting it aside in order to justify injunctive relief in these circumstances. Moreover, no one is on trial for the violation of any of these acts. We are concerned with their validity only insofar as they express the public policy of the sovereign State of Oklahoma. Our purpose is to ascertain whether the power asserted in pursuance of these acts, so offends the paramount Federal law as to justify the exercise of Federal equity powers to vindicate the national policy.

The 21st Amendment prohibits the importation or transportation of intoxicating liquors into the State of Oklahoma, and the State of Oklahoma is empowered to forbid such importation and transportation unfettered by the commerce clause of the Constitution. See also Webb-Kenyon Act, 49 Stat. 877, 27 U.S.C.A. § 122. State Board v. Young's Market Co., 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38; Mahoney v. Trinter Corp., 304 U.S. 401, 58 S.Ct. 952, 82 L.Ed. 1424; Indianapolis Brewing Co. v. Liquor Control Commission, 305 U.S. 391, 59 S. Ct. 254, 83 L.Ed. 243; Ziffrin, Inc., v. Reeves, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128. But the 21st Amendment is not applicable where exclusive jurisdiction is in the United States, without power in the state to regulate alcoholic beverages. Collins v. Yosemite Park & Curry Co., 304 U.S. 518, 538, 58 S.Ct. 1009, 82 L.Ed. 1502. But unlike the Yosemite Park case, there are no legitimate activities to protect, and no Federal legislative policy to vindicate. This is not a case of jurisdictional jealousy between the Federal and State sovereignties; the Federal Government has not asserted any power which may reside in it to insure the safe conduct of the shipment, nor has the consignee invoked the jurisdiction of the court. Only the interstate carrier seeks relief, and the equities of its case rest upon the legitimacy of the articles which it transported and seeks to protect.

The proper and orderly function of our dual system of government is achieved only through a delicate and meticulous balance of Federal and state sovereignty. Each is supreme within the domain delegated or reserved to it by the Federal Constitution, yet both operate to regulate the conduct and behavior of one united people. This delicate balance of power is attained, and maintained, only by a solicitous regard for the power of each sovereign in relation to the general welfare of the governed. The boundaries between the two are indistinct, and only broadly delineated by the Constitution. It is the province of the courts to maintain that essential balance by assuring to each sovereignty the full measure of respect for its laws and ordinances. This balance is not maintained by the utilization of Federal injunctive process, to insure safe conduct of a shipment of intoxicating liquor from without the State to a Military Reservation located within the State, whereat it would be a violation of Federal law to receive, sell, or possess the same. Injunctions by Federal courts against the operation of state laws should, in all events, be based upon considerations of necessity for national dominance. In my judgment, the necessity does not exist here, and the injunction should have been denied.