NATIONAL RAILROAD PASSENGER
CORPORATION, also known as
Amtrak, Plaintiff,

v.

Curtis P. HARRIS, District Attorney, District No. 7, Oklahoma County, Oklahoma, et al., Defendants.

No. Civ–72–636.

United States District Court,
W. D. Oklahoma.

Dec. 30, 1972.

Loyd Benefield and Lana Jeanne Tyree, Oklahoma City, Okl., for plaintiff.

James R. McKinney, and Bill J. Bruce, Asst. Dist. Attys., Oklahoma City, Okl., for defendant, Curtis P. Harris.

Jeff L. Hartmann, and Steven E. Moore, Asst. Atty. Gens., Oklahoma City, Okl., for defendants, Larry Derryberry and Weldon E. Davis.

## MEMORANDUM OPINION

CHANDLER, District Judge.

The plaintiff National Railroad Passenger Corporation, known as AMTRAK, seeks a judicial declaration that the provisions of the Oklahoma Constitution, Article 27, § 4 and of the Oklahoma Statute, Title 37 Okl.St.Ann. § 538(h), relating to the sale of alcoholic beverages are inapplicable to it; that the Congress of the United States has placed the regulation of its activities completely under the control of the Federal Government; that the enforcement of these provisions against it[1] interferes with the uniform interstate operation of AMTRAK and places an undue burden upon Interstate Commerce; that the provisions of Article 27, § 4 of the Oklahoma Constitution are so vague, indefinite, contradictory and deceptive as to be impossible of equable enforcement and that they have been and are now being administered with purposeful discrimination in violation of its rights under the XIVth Amendment to the Constitution of the United States; that its activities do not violate the laws of Oklahoma, properly construed; that it has suffered and will suffer irreparable and irretrievable damages if such discriminatory enforcement is not prevented by the issuance of a permanent injunction to protect and effectuate the judicial decree sought.

The defendants, the District Attorney, District No. 7, Oklahoma County, Oklahoma; the Director of the Oklahoma Alcoholic Beverage Control Board; and the Attorney General of the State of Oklahoma, are public officials charged with the enforcement of the relevant criminal laws of the State of Oklahoma.

AMTRAK is the National Railroad Passenger Corporation created by authority of the Rail Passenger Service Act of 1970, 45 U.S.C. § 541 et seq., for the expressed purpose of providing modern, efficient, intercity rail passenger service within and between all regions of the continental United States as a necessary part of a balanced transportation system to satisfy the national need for expeditious through car service, and sleeping, parlor, dining and lounge facilities, in order to provide faster, more convenient passenger service and services at lower cost to more centers of population.

The Constitution of Oklahoma, Art. 27, § 4 provides:

"§ 4. *Prohibition of open saloon—Retail sales by package stores—Restrictions*

"The open saloon, for the sale of alcoholic beverage as commonly known prior to the adoption of the Eighteenth Article of Amendment to the Constitution of the United States of America, is hereby prohibited.

"The words 'open saloon' shall mean:

"Any place, public or private, wherein alcoholic beverage is sold or offered for sale, by the drink; or, sold, offered for sale, or kept for sale, for consumption on the premises.

"Retail sales of alcoholic beverage shall be limited to the original sealed package, by privately owned and operated package stores, in cities and towns having a population in excess of two hundred. * * *" (Restrictions on package stores.)

The criminal statute under the cloak of which the public officials purported to act in arresting and incarcerating AMTRAK and confiscating its property, 37 O.S.A. § 538(h) provides:

"(h) Any person who shall violate the open saloon prohibition as defined by

---

1. As used herein AMTRAK includes its agents, employees and servants.

Article XXVII of the Oklahoma Constitution shall be guilty of a misdemeanor and, upon conviction, shall be punished by a fine not to exceed Five Hundred Dollars ($500.00), or imprisoned in the county jail not to exceed six (6) months, or both such fine and imprisonment."

The pertinent provisions of the Constitution of the United States are the XIVth Amendment, the XXIst Amendment, the Commerce Clause and the Supremacy Clause which provide:

United States Constitution—Amendment XIV—Sec. 1

"SEC. 1. * * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

United States Constitution—Amendment XXI—Sec. 2

"SEC. 2. The transportation or importation into any State, * * * for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

Commerce Clause—Art. I—Sec. 8

"§ 8. The Congress shall have Power

* * * * * *

"To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes: * * *."

Supremacy Clause—Art. VI

"ART. VI. * * *

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof, * * * shall be the supreme Law of the Land: and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

" * * * all executive and judicial Officers, both of the United States and of the several States, shall be bound, by Oath or Affirmation, to support this Constitution; * * *"

The Rail Passenger Service Act of 1970, *supra,* which authorized the creation of AMTRAK, specifically provides that

"The Corporation shall not be subject to any State or other law pertaining to the transportation of passengers by railroad as it relates to rates, routes, or service." 45 U.S.C. § 546(c).

The Act also provides that

"The [Interstate Commerce] Commission is authorized to prescribe such regulations as it considers necessary to provide safe and adequate service, equipment and facilities for intercity rail passenger service.

Any person who violates a regulation issued under this section shall be subject to a civil penalty of not to exceed $500 for each violation. Each day a violation continues shall constitute a separate offense." 45 U.S.C. § 641.

AMTRAK operates interstate passenger service throughout the United States over routes prescribed by the Congress and the Secretary of Transportation. It is authorized to provide sleeping, parlor, dining and lounge facilities, which facilities embrace the sale of alcoholic beverages, as a part of its basic service.

Alcoholic beverage service on AMTRAK is strictly for bona fide passengers. AMTRAK neither diverts nor distributes alcoholic beverages to others. No liquor is served to passengers while its trains are standing momentarily in stations to discharge and take on passengers; (the longest stop in Oklahoma is ten minutes in Oklahoma City). Service is provided solely within the confines of interstate vehicles performing interstate functions. Passengers are not in direct contact with any other portion of the general public. The citizens of the State of Oklahoma, absent their entry on the interstate carrier as passengers, do not have access to these on-board services. The intrastate services are minimal and incidental to and

inseparably commingled with interstate services.

The Oklahoma Alcoholic Beverage Control Board is generally charged with the enforcement of Oklahoma's liquor laws.[2] Pursuant to licensing procedures established by Oklahoma law, the Board has responsibility for the policing and regulation of some 4,500 licensed retail package stores and has only sixteen enforcement agents in various regions of the State with two assigned to Oklahoma County.

From its inception the Board has meticulously enforced the provisions of the Act with reference to the sale of liquor by retail package stores but according to the testimony of the Director of the Board, due to lack of sufficient manpower, the Board has not routinely investigated "places" selling "liquor-by-the-drink" for the initiation of criminal proceedings for violations of this provision of the law. In short, its efforts to enforce this provision have been sporadic and minimal. It has made no good faith effort to enforce this provision, its established policy having been to ignore it insofar as possible.

The Oklahoma County District Attorney's Office is statutorily directed to enforce all provisions of the Oklahoma Alcoholic Beverage Control Act but it does not, as a matter of routine, investigate "liquor-by-the-drink" sales and initiate criminal proceedings against "places" selling liquor by the drink.

From the evidence this Court finds that these defendants have made no sincere effort to enforce this provision of the Act and that any token enforcement has been sporadic and minimal as well as highly discriminatory. The evidence discloses that liquor is even sold by the drink in three State owned resort lodges.

On July 18, 1972, the Texas Chief, when it arrived at Oklahoma City on its transcontinental run, was boarded by State and County officers, its liquor and records confiscated, its departure delayed thirty-five minutes, its lounge car attendant, George Bell, arrested, removed from the train, incarcerated in the Oklahoma County jail overnight and charged in the District Court of Oklahoma County with operating an open saloon in violation of Oklahoma law.

AMTRAK was singled out. Defendants have knowingly acquiesced in the

2. 37 O.S.A. § 512
  "§ 512. Peace officer power and authority
  "Members of the Board, the Director, Assistant Director, and such agents and inspectors as the Board shall, by appropriate written commission, appoint, shall have all the powers and authority of peace officers of this State in making arrests for violations of this Act, or in serving any process, notice or order connected with the enforcement of this Act issued by the Board or Director. Laws 1959, p. 148, § 12."
37 O.S.A. § 514
  "§ 514. Powers and duties of Board
  * * * * *
  "(1) To supervise, inspect, and regulate every phase of the business of manufacturing, importing, exporting, transporting, storing, selling, distributing, and possessing for the purpose of sale, all alcoholic beverages which shall be necessary and proper to carry out the purposes of this Act.
  * * * * *

  "(7) To make seizures of alcoholic beverages manufactured, sold, possessed, imported, or transported in violation of this Act, and apply for the confiscation thereof whenever required by this Act, and cooperate in the prosecution of offenders before any court of competent jurisdiction;"
37 O.S.A. § 569
  "§ 569. Enforcement of liquor laws by all law enforcement officers
  "All sheriffs, constables, marshals, and police officers, all county and city attorneys, and all members of the Oklahoma Alcoholic Beverage Control Board, the Director, and all employees of said Board, shall diligently enforce all the regulatory and penal provisions of the Oklahoma Statutes relating to manufacturing, transportation, distribution, sale, or dispensing intoxicating beverages. If any such officer, board member, Director, or employee shall fail or refuse to do or perform any duty required by the provisions of such statutes he shall be removed from office as hereinafter provided."

sale of the "liquor-by-the-drink" by others. There has been no effort to initiate or to investigate similar obvious violations by competing modes of travel. From consideration of the entire record it appears that AMTRAK was chosen over other possible defendants due to the wide publicity that would attend such an attack upon its national operations; that "the arrest and confiscation was a publicity stunt with political overtones."

As a matter of law the Court concludes:

■ 1. The convening of a statutory Three Judge District Court to adjudicate the questions presented is not required by the provisions of 28 U.S.C. § 2281 since AMTRAK does not contend that the provisions of the Oklahoma Constitution and Statutes are unconstitutional. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194; Chewie v. Lock, County Attorney, et al, 261 F.Supp. 830, App. Dism. for want of jurisdiction, 387 U.S. 236, 18 L.Ed.2d 748, 87 S.Ct. 1709, D.C.Okl.1967; Tri-State Generation & Transmission Association v. Public Service Commission of Wyoming, 412 F.2d 115 (C.A.10 en banc, 1969), Cert. Den. 397 U.S. 1043, 25 L. Ed.2d 654, 90 S.Ct. 1348.

■ 2. The Court has jurisdiction of the action under Title 28 U.S.C. §§ 1331, 1332 and 1337; is empowered by Title 28 U.S.C. §§ 2201, 2202, to entertain the action and enter the judicial declaration sought; and Title 28 U.S.C. § 2283 vests the Court with the power in aid of its jurisdiction to stay proceedings in State courts by injunction if necessary to protect and effectuate its decrees.

■ 3. The Constitution and laws of the United States made in pursuance thereof are the Supreme Law of the Land. By the enactment of the Rail Passenger Service Act of 1970, 45 U.S.C. § 541 et seq., the Congress of the United States, by authority of the Commerce Clause of the Constitution has preempted for the Federal Government exclusive authority to regulate and control the interstate rail passenger service provided by AMTRAK in order to promote the smooth interstate transcontinental flow of traffic and secure national uniformity of service and services in the operation of its interstate passenger trains. The XXIst Amendment does not conflict with that authority.

■ 4. The subjection of AMTRAK to the Oklahoma criminal laws thwarts and frustrates the Congressional purpose in the creation of AMTRAK and unduly burdens interstate commerce.

■ 5. The liquor operations of AMTRAK do not fall within the prohibition of the XXIst Amendment to the Constitution of the United States. AMTRAK'S trains pass through Oklahoma while performing a national function as a link in the chain of a necessary and needed interstate transcontinental passenger carrier. Sale of liquor on the interstate vehicle can logically be compared to sale within a Federal enclave located within the State of Oklahoma which the State has no power to prohibit. Johnson v. Yellow Cab Transit Co., 137 F.2d 274, C.A.10 1943, affirmed 321 U.S. 383, 64 S.Ct. 622, 88 L.Ed. 814. AMTRAK'S lounge cars and aircraft engaged in the interstate transportation of passengers, being Federally regulated vehicles, may well be termed peripatetic Federal enclaves created by the Congress.

Any power vested in the State of Oklahoma by the XXIst Amendment to the Constitution of the United States under the circumstances here could only arise by virtue of the police power of the State which is recognized by § 503 of the Act.

Interference by the State of Oklahoma with the interstate operations of AMTRAK would be permissible only in the exercise of *valid* police power. The attempted enforcement of 37 O.S.A. § 538(h) is not a valid or reasonable exercise of the police power of the State. Assuming the second paragraph of the Oklahoma Constitutional Amendment 27, § 4 to be valid under State law, the

lounge or club car sale of Federal tax-paid liquor by AMTRAK has no real, substantial or rational relation to the welfare, health, peace, temperance and safety of the citizens of Oklahoma. The sale, purchase and consumption of intoxicating liquor within the State of Oklahoma is not illegal *per se.* In some form in each of the 50 states of the Union the sale of intoxicating liquor is permitted.

■ 6. The Equal Protection Clause of the XIVth Amendment to the Constitution of the United States forbids "invidious" distinctions under color of law among citizens of any State. The purposeful discriminatory enforcement of 37 O.S.A. § 538(h) against AMTRAK constitutes a violation of its rights under the XIVth Amendment. The invidious purposeful discrimination in the enforcement of this provision since its inception insofar as it concerns "places" selling liquor by the drink has been a travesty on fairness, equality and justice and has constituted a violation of the XIVth Amendment rights of all of the citizens of Oklahoma affected thereby.

7. Any one of the foregoing grounds is sufficient to warrant the adjudication sought by AMTRAK. But question has been raised as to the validity and scope of the Oklahoma Constitutional Amendment 27, § 4 which it is necessary to consider. It is contended that its provisions are so contradictory and deceptive as to invalidate it under the provisions of Article 24, § 1 and Article 5, § 57, of the Oklahoma Constitution.

Article 5, § 57 of the Oklahoma Constitution provides:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title * * *. Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

The title to Amendment 27, § 4 is "PROHIBITION OF OPEN SALOON", and paragraph (1) prohibits the "open saloon" for the sale of alcoholic beverage as commonly known prior to the adoption of the XVIIIth Amendment. This first provision appears not to violate Article 5, § 57 of the Oklahoma Constitution.

But there is indeed a sharp conflict between the title and the subject of the second paragraph of the Amendment, and it is contended the subject of the second paragraph which defines an "open saloon" as *"any place,* public or *private"*, where liquor is sold by the drink for consumption on the premises is not expressed in the title; that the subject of the second paragraph does not fall within the true meaning of "open saloon" as commonly used and understood by the Oklahoma voters who voted on the proposed Amendment but has an entirely different meaning.

The subject of the second paragraph of Article 27, § 4 not being germane to the title of the Act would seem to fall within the terms of Article 5, § 57 of the Oklahoma Constitution which, if applicable, would render the provisions of this paragraph void.

If this provision is void, *"The* open saloon" only is prohibited in Oklahoma and only the sale of alcoholic beverage in an "open saloon" would constitute a violation of the Act.

The title of Article 27, § 4 is *completely silent* regarding the sale of "liquor-by-the-drink" for consumption on the premises. Neither is "any place" other than an "open saloon" mentioned. Thus the title would seem to limit the prohibition to "places" that may reasonably be considered to be "open saloons".

Although Webster's Seventh New Collegiate Dictionary defines *"saloon"* as "a *room or establishment in which alcoholic beverages are sold and consumed"* (Barroom-Taproom), this definition is not the meaning of *"open* saloon" as commonly used and understood.

The 1930 edition of Webster's New International Unabridged Dictionary of

the English Language defines "saloon" as

"A place where intoxicating liquors are sold and drunk; a grogshop;— used commonly of a place where there are no lodgings or regular service of meals as in a hotel."

Webster's New International Unabridged Dictionary, Second Edition 1944 defines "saloon" as

"5.a U.S. A shop where intoxicating liquors are sold and drunk, commonly without meals."

█ The Court is of an age that he can and does take judicial notice that prior to the adoption of the Eighteenth Amendment there were many respectable places where liquor was sold by the drink—hotel bars, cocktail lounges, private clubs, restaurants, etc., which were not in any sense considered "open saloons" although *all* except the private clubs were open to the public. They were considered respectable "places" while the "open saloon" as commonly understood was considered quite the opposite. "Open saloon" had a much narrower, very graphic meaning: it connoted a sordid, evil place. To quote Milton: "Through the gate wide open and unguarded, Satan passed." And there is reason to suspect the Oklahoma voters had such a "place" in mind when they adopted Article 27, § 4 of the Oklahoma Constitution and that they were misled and deceived.

█ But the Constitutional provisions to be reconciled here are provisions of the Oklahoma Constitution and since determination of the intensely interesting questions involved is not necessary to the disposition of this case, it is only proper for the Court to exercise judicial restraint and leave them for adjudication by the Supreme Court of Oklahoma upon review of its former decisions in the light of the particular facts involved.

8. Under the Constitution and laws of the United States, AMTRAK is entitled to the adjudication prayed for.

█ 9. It is necessary in aid of the jurisdiction of the Court to protect and effectuate such judgment to issue a permanent injunction to prevent future discrimination against and harassment of AMTRAK in the operation of its interstate passenger trains and to forestall further prosecution of its employees, George H. Bell and John Doe, against whom criminal actions for alleged violations of said Oklahoma laws are pending in State court.

The harm and pecuniary loss to plaintiff if an injunction is denied is readily foreseeable. Adequate legal remedies are not available to compensate AMTRAK for damages which will arise. Plaintiff faces the threat of multiple criminal proceedings, continued interference with its interstate operations, loss of passenger traffic and revenues, increased danger of collisions of its trains with other railroad traffic with resultant loss of life and destruction of property due to delays throwing its passenger trains off schedule, and confusion resulting from confiscation of its records, books, files and liquor necessary to its interstate operations.

An injunction is also necessary to protect the public from the hazards which would be occasioned by future disruptions of the time schedules of the fast transcontinental passenger trains which travel across the continent at speeds approaching 100 miles per hour, meeting and passing other fast oncoming passenger and freight trains. Future arrests and confiscation of the liquor and records of plaintiff can be expected to occasion delays similar to that of July 18, 1972, when the "Texas Chief" was delayed at Oklahoma City for thirty-five minutes while its lounge car attendant, George H. Bell, was arrested and AMTRAK'S liquor and records confiscated. Bell was denied bail and incarcerated overnight in the Oklahoma County Jail and AMTRAK was forced to continue its transcontinental run without his services.