742

## FLIPPIN et al. v. UNITED STATES.
### No. 11785.

Circuit Court of Appeals, Eighth Circuit.
July 16, 1941.

Rehearing Denied Aug. 28, 1941.

J. Forrest McCutcheon, of Dallas, Tex. (Clayton E. McCutcheon, of Dallas, Tex., on the brief), for appellants.

Clinton R. Barry, U. S. Atty., of Ft. Smith, Ark. (Duke Frederick, John E. Harris, and Thomas C. Pitts, Asst. U. S. Attys., all of Ft. Smith, Ark., on the brief), for appellee.

Before WOODROUGH, JOHNSEN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

Appellants were convicted in the District Court in and for the Western District of Arkansas, upon the charge of conspiring to commit the offense against the United States of unlawfully and knowingly importing, bringing and transporting certain intoxicating liquors from Benton County in the State of Arkansas to certain localities in the State of Oklahoma, in violation of the provisions of Section 3 of the Act of Congress known as the "Liquor Enforcement Act of 1936", 27 U.S.C.A. § 223.

In this appeal the assignments of error present the following main points upon which appellants rely:

"The Liquor Enforcement Act of 1936 was and is inapplicable to the transportation of liquor into the State of Oklahoma, and the demurrer of appellants to the indictment should have been sustained."

"The evidence was insufficient, and the record was and is devoid of proof, as to

the relative alcoholic content of a beverage containing 4% of alcohol by volume and a beverage containing 3.2% of alcohol by weight."

The gist of appellants' complaint is thus found in the contention that the Federal Liquor Enforcement Act of 1936 does not apply if the laws of the state into which the transportation is made do not require a permit to accompany the liquor imported, or if the laws of such state do not prohibit all importation of intoxicating liquor into such state; and that the laws of Oklahoma do not provide a permit system bringing the transportation of intoxicating liquor into that state under the terms and provisions of the Liquor Enforcement Act.

The basis of this contention is the provision in that Enforcement Act that in determining whether one is acting in violation of its provisions in importing, bringing or transporting any intoxicating liquor into any state in which such introduction is prohibited, subject to certain specific exceptions, "the definition of intoxicating liquor contained in the laws of such State shall be applied, but only to the extent that sales of such intoxicating liquor * * * are prohibited in such State." It is then pointed out that the Federal Enforcement Act prohibits the transportation into so-called "dry states" of intoxicating liquor "containing more than 4 per centum of alcohol by volume", while the Oklahoma Statute, alleged to be responsive to the requirements of the Federal Enforcement Act, and effective April 20, 1933, defines intoxicating liquors as follows: "Beverages containing more than three and two-tenths (3.2%) per cent alcohol by weight are hereby declared to be intoxicating; all other beverages are declared to be non-intoxicating".

And it is further provided by statute, Sec. 2618, O.S.1931, 37 Okl.St.Ann. § 1, that: "It shall be unlawful * * * to manufacture, sell, barter, give away or otherwise furnish any liquors * * * which contain more than three and two-tenths (3.2%) per cent of alcohol, measured by weight."

Appellants then argue that because the record is devoid of evidentiary proof that the alcoholic content of 4% by volume is substantially the same as alcoholic content of 3.2% by weight, the control method adopted by the State of Oklahoma does not come within that outlined by the federal statute, and, therefore, that the latter is

without application. Counsel for appellants find it necessary to call attention to the Oklahoma Liquor Permit Law of 1939, Ch. 16, O.S.L.1939, p. 16, 37 Okl.St.Ann. § 41, as follows:

"Section 1. Importation without permit unlawful

"It shall be unlawful for any person, individual or corporate, to import, bring, transport, or cause to be brought or transported into the State of Oklahoma, any intoxicating liquor, as defined by the laws of this State, containing more than four (4%) percent of alcohol by volume, without a permit first secured therefor as hereinafter provided."

But they urge its inapplication, because the Federal Enforcement Statute expressly provides that, in its enforcement, "the definition of intoxicating liquor contained in the laws of such State shall be applied, but only to the extent that sales of such intoxicating liquor * * * are prohibited in such State." We are thus consigned to a charge affecting a substantial historical policy of a sovereign state. Appellants rely strongly upon two decisions of this court holding that the control method adopted by the State of Kansas did not come within that outlined by the federal statute, and, therefore, we could not say that that statute applies to the State of Kansas. Arnold v. United States, 8 Cir., 115 F.2d 523; Gregg v. United States, 8 Cir., 116 F.2d 609. In the latter case (opinion per curiam) the court, on rehearing, reversed its former ruling, 113 F.2d 687, in deference to the decision by another section of the court in the Arnold case. In Kansas, also, the statute expressly defining intoxicating liquor includes such liquor as contains more than 3.2 percent of alcohol by weight. In his opinion in the Arnold case [115 F.2d 525], Judge Gardner said: "Whether the laws of Kansas prohibit all sales of intoxicating liquor containing more than 4 per cent. of alcohol by volume depends upon whether 3.2 per cent. by weight is the same or less than 4 per cent. by volume. This presents a problem of translating terms used in one statute into terms used in another statute. We are cited to no recognized standards, tables or formulæ, by aid of which such translation of terms may be effected. We can not presume that it is impossible to have an alcoholic beverage containing not more than 3.2 per cent. of alcohol by weight, which contains more than 4 per cent. of alcohol

by volume, and hence, we can not say that the federal act applies to the State of Kansas."

■ Since the filings of Arnold v. United States, and Gregg v. United States, supra, this court has reached the conclusion, based upon evidence before it, that an alcoholic beverage containing 3.2 percent of alcohol by weight will contain substantially 4 percent of alcohol by volume. It finds that recognized scientific authorities, and the legislative history of the enactment of the Liquor Enforcement Act, of which we may take judicial notice, are corroborative of that evidence, and, therefore, that the Liquor Enforcement Act is applicable to the State of Kansas. Dolloff v. United States of America, 8 Cir., 121 F.2d 157, decided July 8, 1941.

In this conclusion we fully concur and might perhaps rest the determination of the instant case upon it. But, for additional finality, we deem it pertinent to suggest that a pronounced difference exists between the bases underlying the public policies of the States of Kansas and Oklahoma in their attitude toward intoxicating liquors.

It is to be remembered that before the admission of Oklahoma as a state into the Union, a large part of its area was known as Indian Territory, in which were established by treaty and allotment a large number of Indian tribes, specifically designated as wards of the government. Experience had proved that the use of intoxicating liquors was especially injurious and detrimental, not only to the Indians themselves, but to others with whom they came in contact; and then existing laws imposed severe penalties upon the sale of intoxicants to Indians in general. The enforcement of these laws in Oklahoma was invested in the Federal Territorial Courts. So exacting was the government in the maintenance of its duty and undertaking to protect its Indian wards in this respect that it made substantial observance of its territorial policy a condition of the admission of Oklahoma into the Union as a state.

Vol. 34 U.S.Stat. Chapter 3335, p. 267 et seq., contains, among other provisions, "An Act To enable the people of Oklahoma and of the Indian Territory to form a constitution and State government and be admitted into the Union on an equal footing with the original States" (approved June 16, 1906); and Sec. 3(2) of this Enabling Act contains the following provision: "That the manufacture, sale, barter, giving away, or otherwise furnishing, except as hereinafter provided, of intoxicating liquors within those parts of said State now known as the Indian Territory and the Osage Indian Reservation and within any other parts of said State which existed as Indian reservations on the first day of January, nineteen hundred and six, is prohibited for a period of twenty-one years from the date of the admission of said State into the Union, and thereafter until the people of said State shall otherwise provide by amendment of said constitution and proper State legislation."

Section 7, art. 1 of Oklahoma's proposed constitution, filed July 22, 1907, complied in exact language with this condition of the Enabling Act, and provided exceptions for sales for medicinal and scientific purposes, etc. Even since the expiration of the 21-year period imposed by the Enabling Act and the legislative acceptance thereof, the State of Oklahoma has, in general, maintained its policy of prohibiting the importation and sale of liquors commonly regarded as intoxicating, and the United States has continued to hold this special interest in Oklahoma liquor legislation. Accordingly, as there appeared to be an increasing popular demand for modification of the National Prohibition Act, 27 U.S.C.A. § 1 et seq., to permit the manufacture and sale of light beers, Congress enacted what is generally known as the Cullen Beer Bill, approved March 22, 1933, 48 Stat. 16, authorizing the manufacture and sale of malt liquor containing not more than 3.2% of alcohol by weight. However, this being a general statute applicable throughout the United States, Congress evidently thought it necessary to make special provisions for Oklahoma. It enacted House Bill 5690, approved June 16, 1933, expressly legalizing the manufacture, sale, or possession of 3.2 per centum beer in the State of Oklahoma, 48 Stat. 311. This was repealed by the Act of August 27, 1935, described as an Act "To repeal Titles I and II of the National Prohibition Act, to re-enact certain provisions of Title II thereof, to amend or repeal various liquor laws, and for other purposes", to be cited as the "Liquor Law Repeal And Enforcement Act", 49 Stat. 872, 27 U.S.C.A. § 151 et seq.

Thus we come to the Act of June 25, 1936, 49 Stat. 1928, 27 U.S.C.A. § 221 et seq., to enforce the Twenty-First Amend-

ment to the Constitution, in which the importation into dry states of intoxicating liquor "containing more than 4 per centum of alcohol by volume (except for scientific, sacramental, medicinal or mechanical purposes) is prohibited, and in which the definition of intoxicating liquor is made to depend upon state legislation as hereinabove shown."

An important consideration in the construction of statutes is the ascertainment of the purpose and intent of the legislation, where this is possible without distortion of the fair meaning of the language used. United States v. Raynor, 302 U.S. 540, 58 S.Ct. 353, 82 L.Ed. 413. It will be noted that a close relationship exists between the Acts of Congress and of the Oklahoma legislature with respect to intoxicating liquors.

The first departures from the rigidity of the provisions of National Prohibition concerned the manufacture and sale of light beer, and it is evident that in all federal statutes involved Congress intended that the terms used should be understood in their everyday and popular definitions. In this, as in all cases, recourse to Committee reports, sheds informative light, not only upon the intent of Congress, but also upon the comprehensive meaning of the words used. In the report of the Committee of Ways and Means upon the Cullen Beer Bill, approved March 22, 1933, 48 Stat. 16, its chairman said: "Whether the repeal of the eighteenth amendment is to be ratified is yet to be determined and will, of course, require the favorable action of conventions of three-fourths of the States. Pending the determination of this question, the Congress has the power to make such changes in the national prohibition act as it may see fit, keeping in mind the letter and spirit of the amendment. In other words, it may permit the manufacture and sale of any alcoholic liquor which may reasonably be said to be nonintoxicating in fact."

Further on the report says: "The bill provides for a manufacturers' excise tax of $5 per barrel on all beer, lager beer, ale, porter, or other similar fermented liquor, containing * * * not more than 3.2 per cent of alcohol by weight, which is equivalent to 4 per cent by volume."

And, again: "To make legal the sale of such fermented liquor, the bill provides that the national prohibition act, as amended and supplemented, shall not apply to beer, ale, porter, or similar fermented liquor

containing 3.2 per cent or less of alcohol by weight, or 4 per cent alcohol by volume."

Mr. Celler, from the Committee on the Judiciary, submitted report on H.B. 8368, to Enforce the Twenty-first Amendment to the Constitution, approved June 25, 1936, 49 Stat. 1928. He said: "The purpose of the bill is to enforce the twenty-first amendment to the Constitution of the United States, which was declared to be effective on December 5, 1933, and which guarantees Federal protection to 'dry' States against liquor-law violations directed from outside their borders. The bill extends this affirmative protection to States which forbid all sales for beverage purposes of intoxicating liquor containing more than 4 percent of alcohol by volume (3.2 percent of alcohol by weight). Your committee felt it was essential to protect States which permit the sale of liquor containing as much as 4 percent of alcohol by volume, in order to keep faith with the action taken by Congress in the so-called 'Cullen Beer Act' of March 22, 1933, which legalized light wines and beers containing not more than 3.2 percent of alcohol by weight. Those States are considered 'dry' under the bill which permit the sale of liquor containing only so much alcohol as Congress in the act of March 22, 1933, declared not to be within the prohibition of the eighteenth amendment and the National Prohibition Act as to 'intoxicating liquors'."

The report added: "The liquor traffic will be controlled by the Federal Government only to the extent that the States may desire; and that is in keeping with the *obvious intent* of the Twenty-first Amendment." (Italics supplied.)

June 24, 1938, the Circuit Court of Appeals for the Tenth Circuit, within whose geographical limits Oklahoma lies, (Dunn v. United States, 98 F.2d 119, 117 A.L.R. 1302), held that the Liquor Enforcement Act making importation or transportation of liquor into a dry state a federal offense, was inapplicable to Oklahoma because it did not then by its laws prohibit all such importation, or require a permit or license to accompany liquor lawfully imported. Whether responsive to this decision or otherwise, the legislature of Oklahoma enacted the liquor permit law of March 2, 1939, Ch. 16 O.S.L.1939, p. 16, generally called the Conformity Statute, hereinabove quoted; and, since then, the application of the Enforcement Act has been recognized by the same Circuit Court of Appeals.

Hayes v. United States, 10 Cir., 112 F.2d 417. Compare Hastings v. United States, 8 Cir., 115 F.2d 216, and Hinkle v. United States, 8 Cir., 115 F.2d 217.

Taking into account the consistent historical policy of both Congress and the State of Oklahoma with respect to intoxicating liquors, and the obvious intent and purpose of the Twenty-First Amendment, disclosed by Congressional report, and of the State legislation in conformity therewith, is it not conclusively established that 4 per centum of alcohol by volume and 3.2 percent of alcohol by weight are substantially identical, and that the state has sufficiently declared and prescribed the extent to which it desires its liquor traffic to be controlled by the federal government?

 In addition to these well-known sources of information aiding construction of statutes, we have been referred to recognized scientific authorities, including Remington's Practice of Pharmacy, Department of Commerce Bureau of Standards, Rogers' Manual of Industrial Chemistry, and Standard Encyclopedias, in all of which 4 percent by volume and 3.2 percent of alcoholic content by weight are recognized as substantially identical. The concurrence of such established expert authorities, while not deemed essential to the determination of this controversy, is corroborative of the legislative judgment employed in the enactment of these statutes; and its indulgence does not deprive counsel for appellants of any practical opportunity for cross-examination which is suggested. Werk v. Parker, 249 U.S. 130, 132, 39 S.Ct. 197, 63 L.Ed. 514; Northwestern National Life Ins. Co. v. Banning, 8 Cir., 63 F.2d 736. Moreover, in the record proper, we find extended exhibits of the liquors imported and transported from Arkansas into Oklahoma as charged, the main items of which are generally known brands of whiskey, and are so described by the witnesses.

It is a matter of common knowledge that commercial whiskey has an alcoholic content far in excess of any allowable per centum under this statute, whether by weight or volume. According to the Standard Dictionary, to which we may perhaps be permitted to refer, "it contains when prepared for consumption as permitted by the regulations of the Bureau of Internal Revenue, not less than forty-five (45) percent by volume of ethyl alcohol, and, if no statement is made concerning its alcoholic strength, it contains not less than fifty (50) percent of ethyl alcohol by volume as prescribed by law."

By assignments not stressed in argument counsel for appellants have added exceptions to the trial court's refusal to give certain requested instructions, and to its action in permitting the interrogation of a government witness as to his testimony before the grand jury. These assignments have received careful consideration; and we find that, while there was some informality in the main charge, the law of the case was finally so carefully submitted as to preclude any misunderstanding on the part of the jury; and that the questions complained of, permitted to refresh the memory of the witness, furnish no ground of support for the claim of mistrial. We hold that the Liquor Enforcement Act is properly applicable to the State of Oklahoma, and for all the reasons stated we conclude that the judgment of conviction should be affirmed, and it is so ordered.