**The CITIZEN BAND POTAWATOMI INDIAN TRIBE OF OKLAHOMA, Plaintiff–Appellee and Cross–Appellant,**

v.

**The OKLAHOMA TAX COMMISSION; Cindy Rambo; Robert Wadley; and Don Kilpatrick, Defendants–Appellants and Cross–Appellees.**

Nos. 91–6302, 91–6312.

United States Court of Appeals, Tenth Circuit.

Sept. 21, 1992.

David Allen Miley, Asst. Gen. Counsel (David Hudson, Gen. Counsel, with him on the brief), Oklahoma Tax Com'n, Oklahoma City, Okl., for defendants-appellants and cross-appellees.

Michael Minnis (David McCullough, with him on the brief), Michael Minnis & Associates, Oklahoma City, Okl., for plaintiff-appellee and cross-appellant.

Before BALDOCK and SETH, Circuit Judges, and BENSON, District Judge.*

BALDOCK, Circuit Judge.

At issue is whether the Oklahoma Tax Commission ("Tax Commission") may require the Citizen Band Potawatomi Indian Tribe of Oklahoma ("Tribe") to obtain a state license to sell beer containing 3.2% of alcohol by weight ("3.2 beer") on Indian land. The Tribe owns and operates a convenience store and a golf course on land held for it in trust by the federal government. Under its Tribal license,[1] the Tribe was selling 3.2 beer at the convenience store for off-premises consumption and at the golf course for both on and off-premises consumption. The Tax Commission notified the Tribe of its purported obligation to obtain a state license to sell 3.2 beer; the Tribe did not respond. The Tax Commission subsequently notified wholesale distributors of 3.2 beer, including the Tribe's distributors, that their licenses to distribute 3.2 beer could be cancelled for distributing to an unlicensed entity such as the Tribe. Thereafter, the distributors cut off the flow of 3.2 beer to the Tribe. The Tribe brought the present action seeking injunctive relief from the Tax Commission's interference with the Tribe's sale of 3.2 beer. The parties stipulated to the facts, and on cross motions for summary judgment, the district court granted the Tribe's motion reasoning that Oklahoma's statutory classification of 3.2 beer as a "nonintoxicating" beverage, see Okla.Stat.Ann. tit. 37, §§ 163.1, 163.2(a) (West 1990 & Supp.1992), precluded the Tax Commission from directly or indirectly attempting to regulate the Tribe's purchase or sale of 3.2 beer. The district court permanently enjoined the Tax Commission from such action.

We have jurisdiction over the Tax Commission's appeal from this order under 28 U.S.C. § 1291, and we review de novo whether the Tribe was "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Clemmons v. Bohannon, 956 F.2d 1523, 1525 (10th Cir.1992) (en banc) (Court of Appeals reviews summary judgment de novo applying same standard as district court). Of course, summary judgment is not appropriate when there exists "a genuine issue of material fact." Fed.R.Civ.P. 56(c). However, notwithstanding the Tax Commission's contention that a disputed material fact exists as to whether 3.2 beer is intoxicating, the issues before us are whether the Tax Commission's attempted regulation of 3.2 beer is within Oklahoma's authority as conferred to it by the Federal Government and whether Oklahoma has exercised this authority through the Tax Commission. We do not view the intoxicating effects, or lack thereof, of 3.2 beer as dispositive on these strictly legal questions.

I.

Federal law criminally prohibits the "introduc[tion] or attempt[ ] to introduce any malt, spirituous, or vinous liquor, including beer, ale, and wine, or any ardent or intoxicating liquor of any kind whatsoever into the Indian country...." 18 U.S.C. § 1154(a). See also id. § 1156 (prohibiting possession of "intoxicating liquors" in Indian country). See generally Felix S. Cohen, Handbook of Federal Indian Law, 305–08 (1982) (discussing history of liquor prohibition in Indian country). However, these criminal prohibitions do not apply if "such act or transaction is in conformity both with the laws of the State in which such act or transaction occurs and with an ordinance

---

* The Honorable Dee V. Benson, United States District Judge for the District of Utah, sitting by designation.

1. The Tribal license was issued under the authority of a Tribal ordinance regulating the sale of liquor, including 3.2 beer, on Tribal lands. See 47 Fed.Reg. 10643 (1982). The Tribal ordinance requires that persons licensed by the Tribe to sell liquor and beer "shall comply with the State of Oklahoma liquor standards to the extent required by 18 U.S.C. § 1161." Id. § 1–9.09, at 10645. However, the Tribal ordinance states that "total jurisdiction over the sale of liquor and beer products is reserved to and exercised by the [Tribal] Tobacco, Liquor and Beer Control Commission...." Id.

duly adopted by the tribe...." 18 U.S.C. § 1161. Section 1161 was designed to eliminate the discriminatory effect of federal prohibition in Indian country by "legalizing Indian liquor transactions as long as those transactions conformed both with tribal ordinances and state law." *Rice v. Rehner*, 463 U.S. 713, 727–28, 103 S.Ct. 3291, 3300, 77 L.Ed.2d 961 (1983).

In *Rice*, the Supreme Court held that California could require a tribal member and federally licensed Indian trader to obtain a state license in order to sell liquor on a reservation. *Id.* at 715, 103 S.Ct. at 3293. The Court not only rejected the argument that federal law preempted the state's regulation of liquor in Indian country, it held that "[b]y enacting § 1161, Congress intended to delegate a portion of its authority to the tribes as well as the States...." *Id.* at 733, 103 S.Ct. at 3303. *See also id.* at 726, 103 S.Ct. at 3299 ("legislative history of § 1161 indicates ... that Congress intended that state laws would apply of their own force to govern tribal liquor transactions as long as the tribe itself approved these transactions").

Although the seller in *Rice* was an individual whereas here the seller is a federally recognized Indian tribe which, unlike an individual, is immune from suit, *see Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, — U.S. —, —, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991), the individual-versus-tribe distinction makes no difference.[2] Addressing tribal sovereign immunity as a "backdrop" to its preemption analysis, the *Rice* Court found that "tradition simply has not recognized a sovereign immunity or inherent authority in favor of liquor regulation by Indians." 463 U.S. at 722, 103 S.Ct. at 3297; *id.* at 725, 103 S.Ct. at 3299 ("there is no tradition of sovereign immunity that favors the Indians in this respect"). *See also Squaxin*

*Island Tribe v. Washington*, 781 F.2d 715, 719 (9th Cir.1986) ("tribal sovereignty is not infringed" by state's regulation of tribal liquor sales).

■ Furthermore, we recognize that California, the state at issue in *Rice*, has general civil and criminal jurisdiction over Indian country, *see Rice*, 463 U.S. at 741 n. 4, 103 S.Ct. at 3307; *see also* 28 U.S.C. § 1360(a); 18 U.S.C. § 1162(a), whereas Oklahoma has no equivalent authority to apply or enforce its state civil or criminal laws in Indian country. However, a state's authority to regulate liquor transactions is not dependent on the state's exercise of jurisdiction over Indian country. *Cf. Oklahoma Tax Comm'n*, — U.S. at —, 111 S.Ct. at 911–12 (state's taxation of tribal cigarette sales to nontribal members did not depend on state's exercise of jurisdiction over Indian land). *Rice*'s recognition of states' authority to regulate liquor transactions on Indian lands was based solely on § 1161. The Court expressly declined to consider "whether the State effectively has authority to regulate licensing and distribution of liquor transactions on reservations under any other statute" including those which conferred general criminal and civil jurisdiction over Indian land to the state. *Rice*, 463 U.S. at 717 n. 6, 103 S.Ct. at 3295 n. 6 (citing 28 U.S.C. § 1360; 18 U.S.C. § 1162).

■ In *United States v. New Mexico*, 590 F.2d 323 (10th Cir.1978), *cert. denied*, 444 U.S. 832, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979), decided prior to *Rice*, we held that § 1161 did not confer authority on states to impose licensing requirements on tribal liquor sales. *Id.* at 328. *Rice*'s rejection of tribal sovereign immunity in the context of its preemption analysis, and its holding that § 1161 permits state regulation of liquor on Indian lands implicitly overrules our holding in *United States v. New*

---

**2.** The Tribe cites to language in *Rice* arguing that the Supreme Court specifically limited its holding to individual sellers. *Rice*, 463 U.S. at 715 n. 2, 103 S.Ct. at 3294 ("we construe the opinion as applying only to vendors ... who are members of the governing tribe"). We read no such limitation into the Supreme Court's opinion because the language cited is construing the Court of Appeals' opinion, not the Supreme Court's holding.

*Mexico.* We expressly do so now.[3] Under 18 U.S.C. § 1161, states may exercise concurrent jurisdiction with Indian tribes over the regulation and licensing of liquor transactions on Indian lands. *Rice,* 463 U.S. at 726, 103 S.Ct. at 3299.

The Tribe argues that § 1161 is not applicable to tribal 3.2 beer sales in Oklahoma because of a 1933 federal law which purportedly repealed the prohibition on 3.2 beer in Indian country. *See* Act of June 16, 1933, ch. 105, 48 Stat. 311 ("Oklahoma 3.2 Beer Act"). This Act states:

> the manufacture, sale, and/or possession of 3.2 per centum beer is legalized in the State of Oklahoma when and if the same is legalized by a majority of the legal votes cast at an election held in said State, or by an act of the Legislature of the State of Oklahoma, and all Acts or parts of Acts in conflict therewith are hereby repealed.[4]

*Id.* The Tribe contends that this act repealed the prohibition on 3.2 beer in Indian country located in Oklahoma; therefore, § 1161, which was enacted in 1953, did not affect tribal sales of 3.2 beer, which were already legal, and thus cannot be considered a Congressional delegation of authority to Oklahoma to regulate tribal sales of 3.2 beer. Notwithstanding that the Oklahoma 3.2 Beer Act was repealed in 1935,[5] we do not agree with the Tribe's construction of the act.

 The Oklahoma 3.2 Beer Act was passed following the passage of a similar act applicable nationwide which amended and repealed section 37 of the National Prohibition Act, ch. 85, 41 Stat. 305 (1919), to legalize the manufacture and sale of 3.2 beer during Prohibition if approved by the state.[6] *See* Act of March 22, 1933, ch. 4, 48 Stat. 16 ("Beer–Wine Revenue Act"). Congress believed that Oklahoma required specific legislation in order to modify and repeal earlier "special legislation," *see* Act of March 1, 1895, ch. 145, § 8, 28 Stat. 697; Act of June 30, 1919, ch. 4, 41 Stat. 4, which had prohibited liquor in "Indian Territory." *See* 77 Cong.Rec. 4517 (1933) (statement of Congressman Hastings). "[B]efore the admission of Oklahoma as a state … a large part of its area was known as Indian Territory. . . ." *Flippin v. United States,* 121 F.2d 742, 744 (8th Cir.), *cert. denied,* 314 U.S. 677, 62 S.Ct. 184, 86 L.Ed. 542 (1941). However, by 1933, "statutes and agreements providing for the alienation of Indian land [had] ended the Indian country status of many areas of Oklahoma." Cohen, *supra,* at 775 (footnote omitted). Nonetheless, Courts had construed the prohibition of liquor in "Indian Territory" as remaining in force in areas of Oklahoma which had since become part of the state. *See Sharp v. United States,* 16 F.2d 876 (8th Cir.1926). The Oklahoma 3.2 Beer Act was solely intended to "clear[ ] away Congressional inhibitions"

---

**3.** Because a three-judge panel cannot overrule another panel, *United States v. Spedalieri,* 910 F.2d 707, 709 n. 2 (10th Cir.1990), we have submitted the issue of whether *United States v. New Mexico* should be overruled in light of *Rice* to all the active members of the court, and the active court has unanimously concurred in our holding.

**4.** A referendum legalizing the sale of 3.2 beer was passed on July 11, 1933, and subsequently codified by the Oklahoma Legislature. *See* Act of July 13, 1933, Okla.Sess.Laws, ch. 153, § 1.

**5.** Following ratification of the Twenty–First Amendment, Congress passed the Liquor Law Repeal and Enforcement Act, ch. 740, 49 Stat. 872 (1935), which repealed "Titles I and II of the National Prohibition Act … *and all laws amendatory of, or supplementary to, the National Pro-*

*hibition Act. . . ." Id.* § 1, 49 Stat. 872 (emphasis added). The legislative history of the Oklahoma 3.2 Beer Act indicates that it was intended to supplement the Act of Mar. 22, 1933, ch. 4, 48 Stat. 16 ("Beer–Wine Revenue Act"), *see* 77 Cong.Rec. 4517 (1933) (statement of Congressman Hastings), which amended the National Prohibition Act. *See* Act of Mar. 22, 1933, ch. 4, § 2, 48 Stat. 17. Therefore, like the Beer–Wine Revenue Act, the Oklahoma 3.2 Beer Act was repealed by the Liquor Law Repeal and Enforcement Act. *See Flippin v. United States,* 121 F.2d 742, 744 (8th Cir.), *cert. denied,* 314 U.S. 677, 62 S.Ct. 184, 86 L.Ed. 542 (1941).

**6.** The Beer–Wine Revenue Act was passed prior to the repeal of the Eighteenth Amendment, and its passage was marked by a sharp debate in Congress. Proponents relied on testimony from scientists and doctors before the House Ways

in Oklahoma relating to 3.2 beer which Congress had done three months earlier for the rest of the country in passing the Beer–Wine Revenue Act. *See* 77 Cong.Rec. 4517 (1933) (statement of Congressman Hastings). Contrary to the Tribe's contention, the Oklahoma 3.2 Beer Act did not affect the criminal prohibitions on liquor, including 3.2 beer, in the remaining Indian country located in Oklahoma.[7] *See* Act of Jan. 30, 1897, ch. 109, 29 Stat. 506, *amended by* Act of June 15, 1938, ch. 435, 52 Stat. 696 (formerly codified at 25 U.S.C. § 241), *repealed by* Act of June 25, 1948, ch. 645, § 21, 62 Stat. 862 (current version at 18 U.S.C. §§ 1154, 1156). Accordingly, we believe that § 1161's delegation of Congressional authority to the State of Oklahoma and the Tribe to regulate tribal liquor sales encompasses the sale of 3.2 beer.

The district court distinguished *Rice* based on Oklahoma's bifurcated regulatory and licensing scheme which distinguishes "intoxicating" from "nonintoxicating" beverages and classifies 3.2 beer as a "nonintoxicating" beverage. *See* Okla.Stat.Ann. tit. 37, §§ 163.1, 163.2(a) (West 1990 & Supp.1992). Oklahoma's statutory classification has absolutely no bearing on whether Congress has conferred authority to Oklahoma to regulate tribal sales of 3.2 beer. Federal law no longer distinguishes beer based on the alcoholic content but rather flatly prohibits the sale of all "beer

... or any ardent or other intoxicating liquor of any kind whatsoever" unless such sale complies with both tribal and state law.[8] 18 U.S.C. §§ 1154, 1161. The Potawatomi's Tribal ordinance regulating the sale of alcohol includes 3.2 beer. *See* 47 Fed.Reg. 10643, § 1–2.01(11) (1982) (defining "beer" as "any beverage obtained by the alcohol fermentation of an infusion or decoction of pure hops, or pure extract of hops, and malt and sugar in pure water containing not more than 6% of alcohol by weight"). As one learned Oklahoma jurist noted, 3.2 beer "is made by those who make beer, sold by those who sell beer, and drunk by those who drink beer; and ... it looks like beer, smells like beer, and tastes like beer." *Cox v. Oklahoma Tax Comm'n*, 197 Okl. 12, 168 P.2d 634, 644 (1946) (Riley, J., concurring) (internal quotations omitted). While we believe that Congress conferred authority to states to regulate "beer" insofar as it is an intoxicating beverage, it cannot be disputed that a substance containing 3.2 percent of alcohol by weight will produce intoxication when consumed in sufficient quantities.[9] *See Wayne v. United States*, 138 F.2d 1, 2 (8th Cir.1943) ("[t]hat beer is a malt liquor and is intoxicating is a matter of common knowledge and ... requires no proof"), *cert. denied*, 320 U.S. 800, 64 S.Ct. 429, 88 L.Ed. 483 (1944). In short, regardless of what Oklahoma calls it, 3.2 beer is beer and may be regulated by Oklahoma within the

---

and Means Committee "to assume ... that 3.2 per cent beer is nonintoxicating in fact and that the passage of this act will not violate existing law and will not be interfered with by any court in our country...." 77 Cong.Rec. 378 (1933) (statement of Congressman Healy). Opponents contended that the act was "contrary to the fundamental law of this land, the Constitution of the United States, and ... nullifie[d] the Constitution by an act of Congress ... [because] the beer provided by this [act] is intoxicating [and] [n]o sincere man [could] contend that intoxicating beer [would] not be sold." *Id.* at 379 (statement of Congressman Guyer).

7. Following ratification of the Twenty–First Amendment, Congress completely repealed the "Indian Territory" liquor prohibitions "insofar as they appl[ied] to and affect[ed] that part of

the State of Oklahoma formerly known as 'Indian Territory.'" Act of Mar. 5, 1934, ch. 43, 48 Stat. 396.

8. Prior to the repeal of Prohibition, the Beer–Wine Revenue Act distinguished between 3.2 beer and other types of liquor and, indeed, characterized 3.2 beer as "nonintoxicating liquor." *See* Act of March 22, 1933, ch. 4, 48 Stat. 16. However, the Beer–Wine Revenue Act was repealed by the Liquor Law Repeal and Enforcement Act, ch. 740, 49 Stat. 872 (1935). Moreover, Congress recognized the states' authority to regulate 3.2 beer when it legalized it only to the extent that it was permitted by individual states. *See* Act of March 22, 1933, ch. 4, § 4, 48 Stat. 16.

9. The district court "decline[d] the Commission's invitation to recognize these beverages as

authority jointly conferred to the Tribe and the State under 18 U.S.C. § 1161.

## II.

■ While Oklahoma's statutory classification of 3.2 beer as a "nonintoxicating" beverage is not relevant to Congress' delegation of authority, it raises a question as to whether Oklahoma has declined to exercise such authority. The district court reasoned that in defining 3.2 beer as a "nonintoxicating" beverage and not subjecting it to the more rigorous regulatory and licensing scheme that the state had adopted for statutorily defined "intoxicating" beverages, Oklahoma did not have a "significant regulatory interest ... that outweighs tribal interests of self-governance and economic development." *Rice*'s rejection of tribal sovereign immunity in this area upsets the district court's balancing test. Under 18 U.S.C. § 1161, Congress has conferred the authority to regulate liquor, which we read as including 3.2 beer, on Indian lands to both the Tribe and the State. *Rice*, 463 U.S. at 733, 103 S.Ct. at 3303. Moreover, any burden that Oklahoma's licensing scheme might have on the Tribe's economic development is minimal and insufficient to permit an exemption from state licensing requirements authorized by Congress. On the other hand, we believe that Oklahoma does have a "significant regulatory interest" in 3.2 beer notwithstanding its classification as a "nonintoxicating" beverage.

Our research teaches us that Oklahoma's statutory distinction between "intoxicat-

ing" and "nonintoxicating" beverages results from Oklahoma's history as a "dry" state until 1959. In 1907 when Oklahoma was admitted into the United States, its state constitution prohibited the sale, manufacturing or distribution of "intoxicating liquors" and provided criminal penalties for the sale, manufacturing or distribution of "any intoxicating liquor of any kind, including beer, ale, and wine...." [10] Okla. Const. art. I, § 7 (1907) (repealed 1959). This constitutional criminal prohibition was self executing. *Ex Parte Cain*, 1 Okl.Cr. 7, 20 Okl. 125, 93 P. 974, 975 (1908). While a criminal conviction required proof that the beverage was in fact intoxicating, the constitution created a rebuttable presumption that beer, wine and ale were intoxicating. *Moss v. State*, 4 Okl.Cr. 247, 111 P. 950, 955 (1910); *Antonelli v. State*, 3 Okl. Cr. 580, 107 P. 951, 952–53 (1910).

In 1933, Oklahoma adopted by referendum an act which declared "[b]everages containing more than three and two tenths (3.2%) per cent alcohol by weight ... to be intoxicating; [and] all other beverages ... to be non-intoxicating." Act of July 13, 1933, Okla.Sess.Laws, ch. 153, § 1. Although the act was not purported to amend the state constitutional prohibition on "intoxicating liquors," it effectively legalized the sale of 3.2 beer in Oklahoma,[11] and conferred authority on the Tax Commission to license and regulate its distribution. *See id.* §§ 5–14. The Oklahoma Supreme Court upheld the constitutionality of statutes reg-

---

intoxicants in light of such statutory definitions." The court, declining to take judicial notice of the intoxicating effects of 3.2 beer, found that "the fact of intoxication after consumption is 'clearly outside the domain of the indisputable.'" The district court cited *Crosby v. State*, 97 Okl.Cr. 46, 257 P.2d 847 (1953), in support of its reasoning to not take judicial notice that 3.2 beer is intoxicating. At issue in *Crosby* was the legal sufficiency of the evidence to sustain a conviction for unlawful possession of intoxicating liquor. The beer can label did not indicate its alcoholic content, and the state had not tested the beer. The Court of Criminal Appeals held that it would not take judicial

notice that the beer is intoxicating for purposes of prosecution under the state statute. Given that 3.2 beer was legal and statutorily defined as nonintoxicating, we understand the Oklahoma court's reasoning but fail to see its relevance to this case.

**10.** As a condition of statehood, the Federal government required Oklahoma to prohibit intoxicating liquor in Indian country. Act of June 16, 1906, ch. 3335, § 3, 34 Stat. 269 (1906). A 1907 referendum extended the constitutional prohibition statewide.

**11.** Justice Riley of the Oklahoma Supreme Court characterized the law as a "hoax," stating

ulating 3.2 beer sales, as subsequently amended, by reasoning that the constitutional ban on "beer, ale and wine" applies "when they assume the character of intoxicating liquor and are not prohibited by name only, and regardless of their alcoholic content or their intoxicating qualities." *State v. Bliss*, 199 Okl. 198, 185 P.2d 220, 223 (1947).

In 1959, Oklahoma amended its constitution, eliminating the state prohibition on "intoxicating liquors." Okla. Const. art. 27, § 11 (1959) (repealed 1984). The Oklahoma Constitution now provides that "[t]he Legislature shall enact laws providing for the strict regulation, control, licensing, and taxation of the manufacture, sale, distribution, possession, and transportation of alcoholic beverages...." Okla. Const. art. 28, § 3. Such "laws enacted by the Legislature ... shall not include nor apply to any beer or cereal malt beverage containing not more than three and two-tenths percent (3.2%) of alcohol by weight...." *Id.* § 2. The Oklahoma legislature has since enacted the Alcoholic Beverage Control Act, Okla.Stat.Ann. tit. 37, §§ 501–599 (West 1990 & Supp.1992), regulating the sale and distribution of statutorily defined "intoxicating" beverages. Under this act, the licensing and regulation of "intoxicating" beverage sales are under the authority of the Oklahoma Alcoholic Beverage Laws Enforcement Commission, *see id.* § 514, while the licensing, regulating and taxing of "nonintoxicating" beverage sales, including 3.2 beer, remain with the Tax Commission.[12] *See id.* § 163.7.

Although the Oklahoma Attorney General has interpreted the state constitutional and statutory distinction as "evidenc[ing] an intention that these types of beverages are not to be considered as alcoholic beverages ..., nor treated in the same manner as those beverages," Okla.Atty.Gen.Op. No. 85–72 (Feb. 6, 1986), this does not mean that Oklahoma has no interest in regulating "nonintoxicating" beverages. Since 1933, Oklahoma has consistently regulated the sale of "nonintoxicating" beverages such as 3.2 beer. For instance, Oklahoma courts rejected the argument, premised on the statutory distinction, that a person, having drunk only 3.2 beer, could not be convicted of driving an automobile while under the influence of intoxicating liquor. *See Foglesong v. State*, 69 Okl.Cr. 360, 103 P.2d 106, 107 (1940); *Curtis v. State*, 69 Okl.Cr. 278, 101 P.2d 1062, 1063–64 (1940); *Ashcraft v. State*, 68 Okl.Cr. 308, 98 P.2d 60, 63–65 (1940); *Odom v. State*, 68 Okl.Cr. 117, 95 P.2d 916, 917–18 (1939). These courts reasoned that the purpose of the distinction was to classify beverages as a foundation for the subsequent licensing and taxing provisions. *Foglesong*, 103 P.2d at 107; *Ashcraft*, 98 P.2d at 63–65. In *Ex Parte Lee*, 203 P.2d 720 (Okla.Crim. App.1949), the court addressed the statutory distinction in the context of a claim that it violated the state constitutional provision prohibiting a statute from containing more than one subject. In rejecting the challenge, the court stated that "[t]he whole act deals with the one subject matter of alcoholic liquors." *Id.* at 727.

Oklahoma's regulation of 3.2 beer, beginning in 1933, has grown into a complex and

---

that "never before did the proponents of the manufacture and sale of any intoxicating liquors, including beer, infiltrate into legislative assemblies or into executive chambers to seek and secure, by a hoax, the elements of which are fraud and ignorance, a nullification of constitutional provision by mere statutory enactment...." *Cox*, 168 P.2d at 642–43 (Riley, J., concurring). Justice Riley was apparently unaware that Congress had done exactly the same thing four months earlier in passing the Beer–Wine Revenue Act prior to the repeal of the Eighteenth Amendment. *See supra* note 6.

**12.** While the Alcoholic Beverage Laws Enforcement Commission is responsible for the licensing and regulation of "intoxicating" beverage sales, the Tax Commission maintains responsibility for the collection of state excise taxes on such beverages, *see* Okla.Stat.Ann. tit. 37, §§ 542–543, 545–546, 553 (West 1990), and for issuing distributor and wholesaler permits to aid in the collection of such taxes. *Id.* §§ 543.1–543.2.

pervasive scheme which we view as indicative of the state's strong regulatory interest. Oklahoma imposes substantive limitations on the sale of 3.2 beer. *See, e.g.,* Okla.Stat.Ann. tit. 37, § 163.19 (West 1990) (labeling); *id.* § 163.24 (prohibiting sale for on-premises consumption within 300 feet of school or church); *id.* § 163.25 (prohibiting sale in motion picture theatres); *id.* § 213 (hours of sale); *id.* § 213.1 (prohibiting sale where simulated sexual acts are performed); *id.* § 213.2 (prohibiting sale where nudity is permitted); *id.* § 231 (dealer subsidizing prohibition); *id.* § 241 (prohibiting sale to persons under age 21); *id.* § 243 (prohibiting employment of persons under age 18 in place selling 3.2 beer for on premises consumption). Violations may lead not only to a revocation of a permit to sell 3.2 beer, *id.* §§ 163.23, 244, but also to monetary sanctions, *id.* § 163.9, forfeiture, *id.* § 163.15, and criminal sanctions. *Id.* §§ 163.20, 217, 232. Admittedly, Oklahoma's regulatory scheme for 3.2 beer is not as strict as its regulatory scheme for what it defines as "intoxicating" beverages; however, the pervasive state regulations on the sale of 3.2 beer reveal a substantial state interest in regulating the substance, notwithstanding its statutory definition as a "nonintoxicating" beverage.

The Tribe also argues that under Oklahoma's licensing scheme, it is precluded from obtaining a state license to sell 3.2 beer. The Tribe points us to the provision in Oklahoma's licensing scheme which requires a person to obtain a permit from the district court clerk in the county where the person wishes to sell 3.2 beer. *Id.* § 163.-11. According to the Tribe, this section presupposes district court jurisdiction over the regulated person or entity, and Oklahoma district courts have no jurisdiction over the Tribe. *See Oklahoma Tax Comm'n,* —— U.S. at ——, 111 S.Ct. at 909. However, because tribal sovereign immunity is not applicable to regulation of liquor, including 3.2 beer, *Rice,* 463 U.S. at 725, 103 S.Ct. at 3299, Oklahoma district courts may exercise licensing authority over the

Tribe pursuant to Okla.Stat. tit. 37, § 163.-11.

Finally, the Tribe argues that Oklahoma's regulatory scheme precludes it from obtaining a permit to sell 3.2 beer because, as an Indian Tribe, it is required to have a federal permit. Oklahoma prohibits a district court from issuing the required permit to sell 3.2 beer "in any place, location or address, for which there is outstanding license or permit from the United States government." Okla.Stat.Ann. tit. 37, § 163.11 B (West 1990). While the Tribe is required to have a federally approved alcohol ordinance, 18 U.S.C. § 1161, we do not believe that Oklahoma law precludes the Tribe from obtaining a district court permit because of its Tribal alcohol ordinance. To construe the Tribal ordinance as precluding a state license would be contrary to § 1161 which was designed to eliminate the discriminatory effect of liquor prohibition in Indian country.

In light of the Tribe's lack of sovereign immunity in the regulation of liquor and Oklahoma's substantial interest in regulating the sale of 3.2 beer, we hold that the Tax Commission may require the Tribe to obtain a state license to sell 3.2 beer on Indian land. We REVERSE the district court's order granting a permanent injunction to the Tribe and REMAND with instructions to VACATE the injunction and for proceedings consistent with this opinion. We DISMISS the Tribe's cross-appeal from the district court's denial of its request for attorney fees as moot.