Tracy T. Diel, Executive Director Kansas State Gaming Agency 701 S.W. Jackson Street, Suite 200 Topeka, Kansas 66603-3729
Dear Mr. Diel:
You request our opinion regarding whether K.S.A. 1996 Supp. 41-2708(a)(7) would operate to prohibit Native American Indian casinos engaged in tribal gaming as defined by K.S.A. 1996 Supp. 74-9802 from acquiring or holding a cereal malt beverage license.
Each of the compacts covering Indian gaming in this State provide that the sale, possession and consumption of cereal malt beverages (CMB) in the gaming facilities shall be regulated pursuant to state law. The compacts cite to federal law as support for this provision.18 U.S.C. § 1161 authorizes liquor transactions in Indian country if those transactions are in conformance with a tribal ordinance and state law. In Rice v.Rehner, 463 U.S. 713, 77 L.Ed.2d 961, 103 S.Ct. 3291
(1983), the United States Supreme Court held that this provision delegates licensing authority over liquor transactions to the states as well as to the tribes. The Tenth Circuit Court of Appeals has held that11 U.S.C. § 1161 applies to 3.2 beer transactions.Citizen Band Potawatomi Indian Tribe of Oklahoma v.Oklahoma Tax Commission, 975 F.2d 1459 (10th Cir. 1992).
The particular state law you call into question is K.S.A. 1996 Supp. 41-2708(a)(7) which requires revocation or suspension of a CMB license for "permitting any gambling in or upon the licensee's place of business." The statute does not specify that the gambling be illegal, so the question arises as to whether it would effectively preclude an Indian gaming casino from being a CMB licensee.
The term "gambling" is not defined in the Cereal Malt Beverages Act, K.S.A. 41-2701 et seq., or in the Kansas Liquor Control Act, 41-101 et seq. It is, however, defined in the Kansas Criminal Code:
"Gambling is:
"(a) Making a bet; or
 "(b) Entering or remaining in a gambling place with intent to make a bet, to participate in a lottery, or to play a gambling device. . . ." K.S.A. 21-4303.
"Gambling place" is defined as "any place, room, building, vehicle, tent or location which is used for any of the following: Making and settling bets; receiving, holding, recording or forwarding bets or offers to bet; conducting lotteries; or playing gambling devices. . . ." K.S.A. 1996 Supp. 21-4302(e). The definitions of the terms "bet," "lottery" and "gambling device" specifically exclude tribal gaming. K.S.A. 1996 Supp. 21-4302(a)(7), (b)(2), (d)(2)(D). "Tribal gaming" is defined as "any class III gaming conducted pursuant to a tribal-state gaming compact," but does not include "games on video lottery machines, as defined by K.S.A.74-8702. . . ." K.S.A. 1996 Supp. 21-4302(f); 74-9802(c). Thus, class III gaming conducted pursuant to a tribal-state gaming compact is not "gambling" as defined in the Kansas Criminal Code. We have found no other definition for the term "gambling" in the Kansas statutes. While definitions from one act do not necessarily apply to terms appearing in a separate act [First Page, Inc. V. Cunningham, 252 Kan. 593, 599-600
(1992)], we believe the Criminal Code definition is instructive in this case.
A search of the statutes reveals use of the term "gambling" in 39 separate sections. Of these, the term is modified by the words "illegal" or "unlawful" in six instances. K.S.A. 1996 Supp. 22-2512(2)(b); K.S.A.74-8708(h)(2); K.S.A. 1996 Supp. 74-8813(c)(6); K.S.A.79-4703(f); K.S.A. 1996 Supp. 79-4706(d); 79-4712a(c). With the exception of K.S.A. 1996 Supp. 22-2512, every one of these statutes was enacted subsequent to legalization of bingo in 1974, L. 1974, ch. 461, § 1, the State owned and operated lottery in 1986, L. 1986, ch. 414, § 1, or parimutuel wagering on horse and dog racing in 1986, L. 1986, ch. 416, § 1. Thus, at the time these statutes were enacted, it was necessary to distinguish between lawful and unlawful gambling. Conversely, prior to legalization of forms of gambling, it was not necessary to make this distinction. K.S.A. 1996 Supp. 41-2708(a)(7) was enacted well in advance of such legalization. L. 1937, ch. 214, § 6.
The primary rule of statutory construction is that legislative intent governs when that intent can be ascertained. Matter of Marriage of Bunting, 259 Kan. 404,406-407 (1996). When ascertaining legislative intent, the Court is not limited to reviewing only the language used, but may look to the historical background of the statute, circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under various suggested constructions. Id. The statute must be interpreted in the context in which it was enacted and in light of the Legislature's intent at that time. State Board of Nursing v. Ruebke,259 Kan. 599, 622-623 (1996).
When K.S.A. 1996 Supp. 41-2708(a)(7) was enacted, all gambling was illegal in this State, so to add the word "illegal" to the statute at that time would have been superfluous. If K.S.A. 1996 Supp. 41-2708(a)(7) is now interpreted to preclude any gambling, legal or not, in a licensed CMB facility, then there can be no cereal malt beverages in licensed bingo halls or at the race tracks, and Club Keno and other Lottery games cannot be offered in CMB taverns. We do not believe this is the intent of the Legislature. Provision in the compacts, which were passed by both houses and signed by the Governor, for sale and consumption of CMB at the casinos is further evidence of current Legislative intent to preclude CMB licensure only where illegal gambling is allowed to take place.
For these reasons, it is our opinion that the term "gambling" as used in K.S.A. 1996 Supp. 41-2708(a)(7) refers to illegal gambling, not gaming which is lawful and has been excluded from the definition of gambling found in K.S.A. 21-4303 and K.S.A. 1996 Supp. 21-4302.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
CJS:JLM:jm